UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE SHIPPING CORPORATION OF INDIA LTD.

                    Plaintiff,

      -against-

JALDHI OVERSEAS PTE LTD.,

                    Defendant.

08 Civ. 4328 (JSR)

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO VACATE/MODIFY MARITIME ATTACHMENT AND FOR COUNTER-SECURITY

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Defendant
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone: (646) 593-8866

Of Counsel

Rahul Wanchoo, Esq.

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................ii

TABLE OF AUTHORITIES..........................................................................................iii

PRELIMNARY STATEMENT.......................................................................................1

BASIC FACTS..................................................................................................................1

LEGAL ARGUMENT......................................................................................................3

I.   THE COURT SHOULD VACATE THE ATTACHMENT ORDER BECAUSE PLAINTIFF HAS ABUSED SUPPLEMENTAL ADMIRALTY RULE B.................3

II.  THE ATTACHMENT ORDER SHOULD BE MODIFIED TO DIRECT ONLY THE ATTACHMENT OF EFTs ORIGINATED BY DEFENDANT, AND THE ATTACHMENT OF $4,590,678.60 SHOULD BE VACATED BECAUSE DEFENDANT WAS THE BENEFICIARY OF THOSE FUNDS...........................5

III. THE COURT SHOULD ORDER PLAINTIFF TO POST COUNTER-SECURITY FOR DEFENDANT'S COUNTER-CLAIMS IN THE AMOUNT OF $8,05,844.00...........7

   A.   Standard of Counter-Security.....................................................................8

   B.   The claims and counterclaims arise out of the same transaction...............9

   C.   Defendant's counterclaims are not frivolous............................................10

   D.   Requiring counter-security will not prevent the Plaintiff from bringing suit......11

   E.   Defendant is entitled to the full amount of $8,505,844.00 as counter-security for its counterclaims..................................................................................12

IV.  DEFENDANT'S ATTACHED FUNDS SHOULD BE RELEASED AND THE ATTACHMENT VACATED IN THE EVENT THAT PLAINTIFF DOES NOT PROVIDE COUNTER-SECURITY.............................................................13

V.   CONCLUSION.................................................................................................14

# TABLE OF AUTHORITIES

Afram Lines International, Inc. v. M/V Capetan Yiannis 905 F.2d 347 (11th Cir. 19900........8

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006).........3,4,6,7

Bay Casino, LLC v. M/V Royal Empress, 5 F. Supp. 2d 113, 125 (E.D.N.Y. 1998)...............3

Contichem LPG v. Parsons Shipping Co., Ltd., 229 F.3d 426, 434-35 (2d Cir. 2000).............5

Continental Shipping, Ltd. v. Telfair Int'l Corp. 1990 U.S. Dist. LEXIS 11549 (S.D.N.Y. 1990)..................................................................................................................9

Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. 2005)..................................................................................................................11

Rolls Royce Ind. Power (India) v. M/V Fratzis M, 1995 U.S. Dist. LEXIS 22219 (S.D.N.Y. 1995)..................................................................................................................5

Result Shipping Co. Ltd. v. Ferruzzi Trading USA Inc., *56 F.3d 394 (2nd Cir. 1995*..................................................................................................1,2,4,7,8,9,10,11

Seaboard & Caribbena Transp. Corp. v. Hafen-Dampschiffart, *329 F.2d 538 (5th Cir. 1964)*..................................................................................................................11

Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F. Supp. 2d 222, (S.D.N.Y. 2006)........7

Starboard Venture Shipping, Inc. v. Casinomar Transportation, Inc., *1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. 1993)*.....................................................................................................10

Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte. Ltd., 531 F. Supp. 2d 586 (S.D.N.Y. 2008)..................................................................................................................11

Titan Navigation, Inc. v. Timsco, Inc., *808 F.2d 400 (5th Cir.1987)*...............8,9,11,12,14

Transportes Caribe, S.A. v. M/V Feder Trader, *860 F.2d 637 (5th Cir. 1988)*..................9

Verton Navigation, Inc. v. Caribica Shipping Ltd., *1991 U.S. Dist. LEXIS 517 (S.D.N.Y. 1991)*.................................................................................................................. 4,9

Verton Navigation Inc. v. Caribica Shipping Ltd., *1992 U.S. Dist. LEXIS 517 (S.D.N.Y. 1992)*..................................................................................................................13

Voyager Shipholding Corp., v. Hanjin Shipping Co., Ltd. 2008 U.S. Dist LEXIS 11045 (S.D.N.Y. 2008)..................................................................................................9, 10

Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboard Co., 263 U.S. 629 (1924)..................................................................................8,12,13

Western Bulk Carriers (Australia) Pty. V. P.S. Int'l Ltd., 762 F. Supp. 1302, (S.D. Ohio 1991)..................................................................................................5

**STATUTES and RULES**

Fed. R, Civ. P., Supplemental Rules for Certain Admiralty and Maritime Claims, Rule B

Fed. R. Civ. P., Supplemental Rules for Certain Admiralty and Maritime Claims, Rule E(4)(f).

Fed. R. Civ. P., Supplemental Rules for Certain Admiralty and Maritime Claims, Rule E(7)

**OTHER AUTHORITIES**

7A James W. Moore et al,
    Moore's Federal Practice § (E.15), at E-756 (2d ed. 1995)

7A J. Moore & A. Pelaez,
    Moore's Federal Practice § (E.15) at E-737 (2d Ed. 1988)

## **PRELIMINARY STATEMENT**

Defendant, JALDHI OVERSEAS PTE. LTD. ("Defendant" or "Jaldhi"), respectfully submit this Memorandum of Law in support of its motion to vacate/modify this Court's Ex Parte Order for Process of Maritime Attachment and Garnishment dated May 7, 2008 (hereinafter the "Attachment Order") pursuant to Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Admiralty Rule") E(4)(f) and for counter-security pursuant to Supplemental Admiralty Rule E(7). In particular, Defendant moves:

1. To vacate the Attachment Order because The Shipping Corporation of India Ltd. ("Plaintiff" or "SCI") has abused Supplemental Admiralty Rule B by being over secured by about $184,157.90.

2. In the alternative, to modify the Attachment Order so that it applies to electronic funds transfers ("EFT") of which the Defendant is the originator, not the beneficiary, and to vacate the attachment of $4,590,678.60 presently restrained as a result of the Attachment Order because Defendant was the beneficiary of these funds.

3. In the event that the Court maintains the Attachment Order as to Defendant in any amount, the Court should order the Plaintiff to post counter-security for Defendant's counterclaims in the amount of $8,505,844.00 inclusive of interest and costs.

## **BASIC FACTS**

Details are provided in the accompanying declaration and exhibits of Amit Oza dated May 22, 2008 ("Oza *Decl.*") and the Affidavit of Rahul Wanchoo dated May 22, 2008 ("*Wanchoo Aff.*").

The Defendant chartered the M.V. RISHIKESH ("Vessel") from the Plaintiff pursuant to a maritime charter party contract dated March 12, 2008 ("Charter"). *Oza Decl.* ¶3.4. The Charter

1

provided that the Plaintiff was to deliver the Vessel "with hull, machinery and equipment in a thoroughly efficient state." *Id.*. Plaintiff delivered the Vessel to Defendant at about 0130 hours GMT on March 29, 2008. *Oza Decl.* ¶3.5. Following delivery, the Vessel was berthed and loading commenced. About six hours into the loading operation, the Vessel's No.1 crane collapsed. *Id.* The crane collapse seriously injured the crane driver who subsequently died. *Oza Decl.*¶4. Following the crane collapse, the Kolkatta Port Trust suspended all loading operations until the entire Vessel's cranes were inspected and Plaintiff had submitted certain documentation to the Port Trust. *Oza Decl.* ¶4.8. As a result of the accident and the suspension of the Vessel from Defendant's service, the Defendant placed the Vessel off hire. *Id.* Furthermore, given the fact that the crane collapse occurred only six hours after the Vessel was delivered to the Defendant, no hire is due under the Charter to the Plaintiff till the Vessel is all fast alongside at the same or similar berth from where she was removed from Defendant's service. *Id.* Nevertheless, Defendant has paid hire to the Plaintiff in the amount of $1,260,585.00, which is hire for the first fifteen days plus the value of bunkers estimated to be consumed till Singapore. *Id.*

On May 7, 2008, Plaintiff filed a Verified Complaint in this Court seeking security for unpaid hire in the amount of $3,608,445.00, plus interest of $757,773.00 and estimated lawyers and arbitrators' fees and costs of $450,000.00, for a total of $4,816,218.00 *Wanchoo Aff.* ¶4. On May 14, 2008, pursuant to the Attachment Order Plaintiff restrained $4,816,218.0 of Defendant's EFTs passing through the Bank of New York Mellon, New York. *Wanchoo Aff.* ¶5.

On May 14, 2008, Plaintiff filed an Amended Verified Complaint. The amended complaint gives credit to Defendant for the first hire installment paid by Defendant on May 7, 2008 in the amount of $1,260,585.00. *Wanchoo Aff.* ¶6. However, Plaintiff's claim has been

reduced by only $126,971.00 from $4,816,218.00 to $4,689,247.00. *Id.* While the Plaintiff has reduced the amount sought to be attached as security for its claim of $4,689,247.00, Plaintiff has not released the funds under attachment in excess of the amount claimed. *Wanchoo Aff.* ¶7.

## ARGUMENT

### POINT 1

### THE COURT SHOULD VACATE THE ATTACHMENT ORDER BECAUSE PLAINTIFF HAS ABUSED SUPPLEMENTAL ADMIRALTY RULE B

Supplemental Admiralty Rule E(4)(f) places the burden on Plaintiff to show to the Court why its attachment should not be vacated. *See* Bay Casino, LLC v. M/V Royal Empress, 5 F. Supp. 2d 113, 125 (E.D.N.Y. 1998).

The Second Circuit Court of Appeals in Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2d Cir. 2006), recently held that a Supplemental Admiralty Rule E(4)(f) hearing is not intended to resolve the dispute between the parties, but to determine if the technical requirements of the Rule were met. Thus, if plaintiff establishes that it has alleged a prima facie maritime claim, the defendant is not present in the district, the defendant's property has been restrained in the district and no other statutory bar to the attachment exists, the attachment will be upheld. *See* Aqua Stoli, 460 F.3d 434, 443-45.

Yet, the Aqua Stoli court also recognized three limited bases for vacating attachments. Defendant does not come before your Honor to argue that plaintiff's attachment should be vacated on any of the three limited grounds set out in Aqua Stoli but rather to point out that the Aqua Stoli decision also quite clearly noted that the ability of a district court to vacate an attachment is based on "equitable discretion". *See* Aqua Stoli, 460 F.3d 434.

Thus, this Court should exercise its equitable discretion and consider the equities between these parties on the factual record. It is submitted that the factual record evinces that the Plaintiff is fully committed in its effort to unlawfully manipulate Supplemental Admiralty Rule B and thereby abuse this special remedy afforded to maritime claimants. This should be fully met with an appropriate penalty by this Court. Defendant submits that vacating Plaintiff's attachment and dismissing its action with prejudice would be a highly equitable result given these circumstances.

An acknowledged remedy for a willful failure to adhere to court orders in maritime attachment actions is to vacate the underlying attachment. *See* Verton Navigation, Inc. v. Caribica Shipping Ltd., 1992 U.S. Dist. LEXIS 517, *5 (S.D.N.Y. 1992). In the present case, Plaintiff has willfully chosen to disregard the limits of the attachment order it obtained pursuant to its Amended Complaint. *Wanchoo Aff.* ¶7. Plaintiff has restrained $184,157.90 more than it sought to attach as per its Amended Complaint. *Id.* Plaintiff also refuses to release the excess funds to the Defendant. In response to our inquiry that Plaintiff confirm that any excess funds had been released to the Defendant, Plaintiff's counsel evaded the question and instead demanded to know if Plaintiff had released any funds originating by the Defendant. *Wanchoo Aff.* ¶7. First, Plaintiff could easily have obtained this information from the intermediary banks that had restrained the EFTs pursuant to the Attachment Order. Second and more importantly, this information has no bearing on the fact that Plaintiff is presently over secured in the sum of $184,157.90 and has abused the attachment process. Thus, it would be an appropriate remedy to deprive the Plaintiff of the prejudgment remedy afforded by Supplemental Admiralty Rule B by vacating the attachment and dismissing this action with prejudice.

It has also been recognized in this Circuit that abuse of process will serve as the basis for vacatur of maritime attachments. *See* Contichem LPG v. Parsons Shipping Co., Ltd., 229 F.3d

426, 434-35 (2d Cir. 2000) (improper use of a temporary restraining order preliminary to service of process of maritime attachment and garnishment to attach wire transfer funds). Consideration of whether the Plaintiff has, in fact, abused Supplemental Admiralty Rule B by knowingly restraining over $180,000.00 more property than it is lawfully entitled under the process of maritime attachment and garnishment is urgently required. *See* generally Rolls Royce Ind. Power (India) v. M/V Fratzis M, 1995 U.S. Dist. LEXIS 22219, *10 (S.D.N.Y. 1995); Western Bulk Carriers (Australia) Pty. v. P.S. Int'l Ltd., 762 F. Supp. 1302, 1309 (S.D. Ohio 1991).

## POINT II

### THE ATTACHMENT ORDER SHOULD BE MODIFIED TO DIRECT ONLY THE ATTACHMENT OF EFTs ORIGINATED BY DEFENDANT, AND THE ATTACHMENT OF $4,590,678.60 SHOULD BE VACATED BECAUSE DEFENDANT WAS THE BENEFICIARY OF THOSE FUNDS

This point is before the Court due to case law which has developed since 2002 concerning a plaintiff's right to attach an EFT as "property" within the meaning of the Supplemental Rules B and E.

In the seminal case of Winter Storm Shipping Ltd. v. TPI, 310 F. 3d 263 (2d Cir. 2002) ("Winter Storm"), the Second Circuit held that pursuant to Rule B, a plaintiff could attach an EFT <u>originated</u> by a defendant as it was cleared by a bank in New York. The Second Circuit panel held that an EFT was "property" under maritime law. The panel in *Winter Storm* did <u>not</u> have before it the question of whether an EFT was property of a defendant-<u>beneficiary</u> of an EFT.

Between the decision of the panel in 2002 in *Winter Storm* and the decision of a different panel in 2006 in *Aqua Stoli, supra,* several district court judges held that EFT's were property "of" a defendant-beneficiary attached under Rule B, as well as of its originator, even though the

5

originator and beneficiary were separate persons. *E.g.*, Noble Shipping, Inc. v. Euro-Maritime Chartering Limited, 2003 U.S. Dist. LEXIS 230008 (S.D.N.Y. 2003); HBC Hamburg Bulk Carriers GMBH & Co. KG v. Proteinas Y Oleicos S.A. de , 2005 U.S. Dist. LEXIS 8009 (S.D.N.Y. 2005); Vamvaship Maritime Ltd. v. Shivnath Rai Harnrain (India) Ltd., 2006 U.S. Dist. LEXIS 21114 (S.D.N.Y. 2006); Compania Sudamericana de Vapores S.A. v. Sinochem TianjinCo., 2007 U.S. Dist. LEXIS 24737 (S.D.N.Y. 2007).

In *Aqua Stoli*, the parties did not address the question whether an EFT was property of a defendant-beneficiary. Nevertheless, early in the Aqua Stoli decision, the panel stated, "Under the law of this circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that jurisdiction". 460 F.3d at 436. However, since the Aqua Stoli panel did not have before it for decision the issue of whether an EFT is attachable as property of a defendant-beneficiary, this statement is *obiter dictum*, defined by Black's Law Dictionary (8th ed. At p. 1102) as: "A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive)."

Then, in the now infamous "footnote 6" (460 F.3d at 446 n.6), the Aqua Stoli panel communicated its concern about an issue it believed had not been adequately addressed in Winter Storm and, by implication, in Aqua Stoli (because it was not an issue in that case), namely, "whose" property an EFT was as it was cleared in New York.

In Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 461 F. Supp. 2d 222, 225 (S.D.N.Y. 2006), this Court picked up the challenge laid down in footnote 6 of Aqua Stoli and held that an EFT could not be attached as property of a defendant-beneficiary. This Court recognized that Aqua Stoli "stated the broad rule that 'EFTs to or from a party are attachable by

a court as they pass through banks located in that court's jurisdiction". <u>Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.</u>, 461 F. Supp. 2d 222, 225 (S.D.N.Y. 2006). However, your Honor construed <u>Aqua Stoli</u> footnote 6 to require a narrow reading of <u>Winter Storm.</u> Your Honor read <u>Winter Storm</u> to be limited to the <u>originator's</u> property interest in an EFT, and borrowed from state law to hold that an EFT is only the originator's property. *Id.*

In the circumstances, we respectfully submit that this Court should follow its holding in <u>Seamar Shipping</u> that an EFT is the property of an originator while in transit and NOT the property of the beneficiary while in transit. In the present case, out of the $4,873,404.90 of EFTs presently restrained as a result of the Attachment Order, Defendant was the beneficiary of $4,590,678.60. *Wanchoo Aff.* ¶8. Accordingly, if the Court does not vacate the attachment as requested in Point I, the Attachment Order should be modified to direct only the attachment of EFTs originated by Defendant Jaldhi. Second, as there is no dispute that Defendant was the originator of only $282,726.35 out of the total funds restrained, the attachment of $4,590,678.60 should be vacated because Defendant Jaldhi was the beneficiary of those EFTs at the time the funds were restrained while in transit at the hands of the intermediary bank. See, *Wanchoo Aff.* ¶8).

## POINT III

### THE COURT SHOULD ORDER PLAINTIFF TO POST COUNTER-SECURITY FOR DEFENDANT'S COUNTERCLAIMS IN THE AMOUNT OF $8,505,844.00

*A.     The Standard for counter-security*

The concept of counter-security is found in the first promulgation of the rules in American admiralty courts, and it continues today with little substantive change in Supplemental Admiralty Rule E (7) of the Supplemental Rules for Admiralty or Maritime Claims and Asset

7

Forfeiture Actions. *See,* Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 402 (5th Cir. 1987), Supplemental Admiralty Rule E(7) provides in relevant part:

> Whenever there is asserted a counterclaim arising out of the same transaction or occurrence with respect to which the action was originally filed, and the defendant or [counter-]claimant in the original action has given security to respond in damages, any plaintiff for whose benefit such security has been given shall give security in the usual amount and form to respond in damages to the claims set forth in such counterclaim, unless the court, for cause shown, shall otherwise direct….

The final clause of the quoted language makes clear that the trial court possesses discretion in deciding whether to order counter-security. *See,* Afram Lines International, Inc. v. M/V Capetan Yiannis, 905 F.2d 347, 349 (11th Cir. 1990); Titan Navigation, Inc. v. Timsco, Inc., 808 F.2d 400, 403 (5th Cir. 1987); 7A James W. Moore et al., Moore's Federal Practice § (E.15), at E-756 (2d ed. 1995).

In exercising this discretion, the district court should be guided primarily by two principles, which sometimes conflict with one another. On the one hand, the purpose of Rule E(7) is "to place the parties on an equality as regards security," Titan Navigation, 808 F.2d at 403 (*quoting* Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co., 263 U.S. 629, 638-39, 68 L. Ed. 480, 44 S. Ct. 220 (1924)), which usually favors granting counter-security when a defendant whose property has been attached asserts non-frivolous counterclaims growing out of the same transaction, especially when the counterclaimant could have proceeded *in rem* or *quasi in rem* in an independent suit. Result Shipping Co., Ltd. v. Ferruzi Trading USA, Inc., 56 F.3d 394, 399 (2nd Cir. 1995). As was stated by Judge Mukasey when he was a member of this Court, "[t]he purpose [of Rule E(7)] is to force litigants to 'put their money where their mouth is,' so to speak," Continental Shipping, Ltd. v. Telfair Int'l Corp., 1990 U.S. Dist. LEXIS 11549 (S.D.N.Y. 1990). On the other hand, the Rule is not

intended to impose burdensome costs on a plaintiff that might prevent it from bringing suit. Result Shipping, *citing to*, Titan Navigation, 808 F. 2d at 403-05 and Washington-Southern, 263 U.S. at 632-36 (construing the predecessor to Rule E(7) under old Admiralty Rules). Furthermore, there is no general principle of law limiting an award of counter-security to the amount originally attached. Such an absolute rule would be a travesty, not an application, of the rule that awards of counter-security aim to place the parties on an "even footing". Voyager Shipholding Corp., v. Hanjin Shipping Co., Ltd., 2008 U.S. Dist LEXIS 11045 (S.D.N.Y. 2008).

### B.   *The Claims and counterclaims arise out of the same transaction*

It is axiomatic that claims and counterclaims between vessel owners and charterers arising out of a vessel charter are considered "arising out of the same transaction" for purposes of Supplemental Rule E(7). Verton Navigation, Inc. v. Caribica Shipping Ltd., 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. 1991); Transportes Caribe, S.A. v. M/V Feder Trader, 860 F.2d 637 (5th Cir. 1988).

In the present case, the original claim stems from Defendant's alleged failure to pay hire under a maritime charter party contract of the M.V. RISHIKSH ("Vessel") dated March 12, 2008. (See Verified Complaint annexed as Exhibit 1 to the Wanchoo Affidavit). Defendant Jaldhi alleges that because the Vessel was unseaworthy when she was delivered into the Charter (*Oza Decl.¶3.6*), and because Plaintiff has suspended its service whilst repairs, surveys and documentation is prepared to verify the condition of the remaining cranes to the Port Authorities satisfaction, no hire is due to the Plaintiff till the Vessel is back alongside at the same or similar berth and in a fully efficient state. *Oza Decl ¶ 4.7*. Furthermore, the Vessel remains off-hire until she is all fast alongside the same or similar berth from where she was removed from Defendant's service. *Oza Decl ¶4.8*. Defendant, Jaldhi is also facing a loss of profit claim by the shipper

because of Plaintiff's failure to load the cargo. *Oza Decl ¶4.10 – 4.12.* Last but not least, Defendant is potentially liable for any wrongful death claim which may be brought by the estate of the crane operator who was killed when Plaintiff's crane collapsed shortly after the Vessel was delivered to the Defendant. *Oza Decl ¶4.1 – 4.3.*

Clearly the Plaintiff's claim and the Defendant's counterclaims arise from the same charter party contract and the same casualty relating to that contract. Because of the temporal proximity of the competing claims, the fact that the competing claims arose from the same charter party agreement between the parties, and the relation of the competing claims to one another, this Court should find the counterclaims arise out of the same transaction.

### C. *Defendant's counterclaims are not frivolous*

While Supplemental Admiralty Rule E(7) contains mandatory language, the trial courts possess "broad discretion in deciding whether to order counter-security." Voyager Shipholding Corp., v. Hanjin Shipping Co., Ltd. 07 Civ. 11123, 2008 U.S. Dist. LEXIS 11045 *citing* Result Shipping Co. v. Ferruzzi Trading USA Inc., 56 F.3d 394, 399 (2d Cir. 1995). One area where the court may exercise this discretion is the determination of the frivolity of a counterclaim. "The premise that counter-security will not be required on the basis of frivolous counterclaims is a sound one." Starboard Venture Shipping, Inc. v. Casinomar Transportation, Inc., 1993 U.S. Dist. LEXIS 15891 (S.D.N.Y. 1993). Conversely, a court's ability to understand the merits of a particular dispute, especially early in a proceeding is "limited, and courts should be reluctant to prejudge the merits of claims based entirely on the pleadings and a sparse record consisting of a few documents, in advance of any discovery." Finecom Shipping Ltd., v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. 2005). An inability to understand the merits at an early stage is extenuated when "the ultimate merits will be decided not by this

Court", but by another foreign judicial body. *Id.* at *4-*5 (the final decision in <u>Finecom</u> rested with foreign arbitration panel's determination of the facts so the court was unable to determine the alleged frivolousness of defendant's counterclaims and granted counter-security).

Based upon these factual disputes, which are to be resolved by the London Arbitration, the counterclaims presented by the Defendant cannot be considered to be frivolous.

### D. *Requiring counter-security will not prevent the Plaintiff from bringing suit*

Before allowing claims for counter-security, courts must be wary of the burden placed on the Plaintiff, and take care to ensure the counter-security claim will not "prevent [Plaintiff] from bringing suit." *See,* <u>Result Shipping</u>, 56 F.3d at 400. However, financial difficulties do not automatically excuse the counter-security requirement. *See,* <u>Tang Kheok HWA Rosemary v Jaldhi Overseas Pte. Ltd.</u> 531 F. Supp. 2d 586 (S.D.N.Y. 2008); <u>Titan Navigation,</u> 808 F.2d at 404, *citing* <u>Seaboard & Caribbena Transp. Corp. v. Hafen-Dampschiffart</u>, 329 F.2d 538 (5th Cir. 1964). According to Plaintiff's web site:

> SCI is a profitable commercial venture of Government of India and has an excellent track record of earning profits since its inception barring a brief period when the shipping industry worldwide was under depression.

See Exhibit 7 to *Wanchoo Aff.*

Therefore, requiring the Plaintiff to post counter-security will not impose any burden on Plaintiff.

### E. *Defendant is entitled to the full amount of $8,505,844.00 as counter-security for its counterclaims*

It has been stated countless times that one of the main purposes of Rule E(7) is "to place the parties on an equality as regards to security." <u>Titan Navigation,</u> 808 F.2d at 403 (*quoting* <u>Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.</u>, 263 U.S. 629,

638-639 (1924). While some courts have limited the amount of security for counterclaims to the amount posted by the original defendant, this Court should follow the approach once advanced in Moore's Federal Practice, which stated:

> A holding [precluding imposition of a larger bond on the counterclaim than that which was required of the original defendant]...would serve only to encourage sham suits and races to the court house. Suppose, by way of illustration that two vessels collide and one suffers only minor damage and the other sustains very severe damage. If the owner of the slightly damaged vessel commences an action *in rem* against the severely damaged vessel a relatively small bond will be required by the owner of the severely damaged vessel. If the owner of the latter vessel is compelled to assert a much larger claim in the same action, it might be grossly unfair to limit the security for his claim to the amount of the bond he had to provide, since had he first commenced his action he could have compelled the posting of a bond large enough to compensate for the severe damages he alleges. In such a case, it might well be "just and reasonable" and more in keeping with the purposes of the rule providing for security on counterclaims to require that the original plaintiff post a larger bond to protect against the counterclaim than the original defendant had to post to protect against the original action. If courts are not alert to such facts, it might encourage the filing of sham suits by parties who know they are potential targets for large *in rem* actions. Similarly, a flat rule providing that security on counterclaims cannot exceed the amount of the original defendant's bond would encourage races to the courthouse by the least injured of the parties sustaining damages in a maritime occurrence.

7A J. Moore & A. Pelaez, Moore's Federal Practice § (E.15) at E-737 (2d Ed. 1988). This is a well-reasoned approach, particularly in light of the fact that Defendant could have proceeded with its claim *quasi rem* in the Southern District of New York as well, but that Plaintiff "won the race to the courthouse door".

Additionally, this court has previously awarded defendants the full amount sought in an action for countersecurity. *See,* Verton Navigation, *supra.* The placement of parties in equal standing merits the assurance that a full claim is secured, rather than what may amount to a small percentage of the overall claim. In the present matter, Plaintiff has secured $4,873,404.90 through a Rule B attachment of EFTs which Defendant contests to the extent of $4,590,678.90

because Jaldhi was the beneficiary of those EFTs. To be fully secured in its counterclaim and placed on equal footing, Defendant asks this court to grant counter-security in the amount of $8,505,844.00. *Oza Decl.* ¶7. Had Defendant brought its action first, it would have been able to secure this amount, and the fact that the order of the claims is opportunely in favor of Defendant should not limit this award.

**POINT IV**

**DEFENDANT'S ATTACHED FUNDS SHOULD BE
RELEASED AND THE ATTACHMENT VACATED IN THE
<u>EVENT THAT PLAINTIFF DOES NOT PROVIDE COUNTER-SECURITY</u>**

Again, the policy to place the parties on equal footing in relation to security blankets motions for counter-security. *See,* <u>Washington-Southern Navigation Co. v. Baltimore & Philadelphia Steamboat Co.</u>, 263 U.S. 629, 638-39 (1924). Certainly, when one party posts security and the other fails to comply with a court order to do the same, inequity results.

The Court has demonstrated its willingness to vacate a plaintiff's attachment if that plaintiff fails to comply with an order to provide security for counterclaim. *See,* <u>Verton Navigation</u>, 1992 U.S.Dist. LEXIS 517 (S.D.N.Y. 1992) (dismissing plaintiff's complaint for failure to comply with court's order to post counter-security). Additionally, other circuits have vacated attachments when a party claiming financial inability failed to post counter-security. *See* <u>Titan Navigation, Inc. v. Timsco, Inc.</u>, 808 F.2d 400 (5th Circ. 1987). In <u>Titan Navigation</u>, the court concluded that "there usually would be little or no reason to permit a complainant to enjoy unilateral security rights, absent strong justification..." *Id.*

In the present matter, Defendant requests an order of this Court stating that Defendant is entitled to the release of its restrained funds in the event that the Plaintiff fails to provide

13

adequate counter-security. To allow otherwise would create an inequitable situation where one party is protected, leaving the other to suffer with the resulting injustice.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, Defendant respectfully submits that the Court should (1) vacate the Attachment Order because Plaintiff has abused Supplemental Admiralty Rule B by being over secured by about $184,157.00; (2) in the alternative to modify the Attachment Order so that it applies to EFTs of which the Defendant is the originator, and to vacate the attachment of $4,590,678.60 presently restrained because Defendant was the beneficiary of these funds; and (3) in the event the Court maintains the Attachment Order in any amount, the Court should order Plaintiff to post counter-security for Defendant's counter-claims in the amount of $8,505,844.00.

Dated: New York, New York
      May 22, 2008

Respectfully submitted,
**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Defendant
JALDHI OVERSEAS PTE. LTD.

By: _Rahul Wanchoo_
    Rahul Wanchoo (RW-8725)

## CERTIFICATION

Rahul Wanchoo, an attorney admitted to practice before this Honorable Court, certifies that on this 22nd day of May, 2008, a copy of the foregoing Memorandum of Law was served via email to the following counsel of record.

BLANK ROME LLP
Attorneys for The Shipping Corporation
of India Limited
405 Lexington Avenue
New York, NY 10174

Attn:   Jeremy J.O. Harwood, Esq.

_____
RAHUL WANCHOO