BLANK ROME LLP
Attorneys for Plaintiff
THE SHIPPING CORPORATION OF INDIA LTD.
Jeremy J. O. Harwood (JH 9012)
The Chrysler Building
405 Lexington Avenue
New York, NY  10174-0208
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE SHIPPING CORPORATION OF INDIA, LTD., <br><br> Plaintiff, <br><br> -against- <br><br> JALDHI OVERSEAS PTE LTD., <br><br> Defendant. | 08 Civ. 4328 (JSR) |

## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO VACATE PROCESS OF MARITIME ATTACHMENT AND GARNISHMENT AND, OR IN THE ALTERNATIVE, FOR COUNTER-SECURITY

*Jeremy J. O. Harwood*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY  10174-0208*
*(212) 885-5000*

683622.00601/6640293v.1

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...............................................................................................1

THE FACTS ...........................................................................................................................1

    A.    THE CHARTER ...............................................................................1

    B.    THE ACCIDENT ...............................................................................1

    C.    JALDHI'S COUNTERCLAIMS .................................................................2

        1.    Off-Hire: $4,764,095 .........................................................2
        2.    "Lost Profit": $2 Million .........................................................3
        3.    Wrongful Death: $1 Million.................................................3

ARGUMENT...........................................................................................................................4

POINT I ..................................................................................................................................4

    SCI IS IMMUNE FROM ATTACHMENT .......................................................4

POINT II .................................................................................................................................5

    THE PMAG WAS PROPERLY ISSUED AND, PURSUANT TO SECOND
    CIRCUIT AUTHORITY, PROPERLY ATTACHED EFTS OF WHICH JALDHI
    WAS THE BENEFICIARY...........................................................................5

POINT III.................................................................................................................................8

    IRRESPECTIVE OF SCI'S IMMUNITY JALDHI IS NOT ENTITLED TO
    COUNTER-SECURITY ...............................................................................8

    A.    The Standard Is Discretionary ..................................................8

    B.    Frivolous Counterclaims ........................................................9

    C.    Contingent Indemnity Claims ..................................................9

    D.    Cases Applying The Principles ...............................................11

        1.    YTHAN ...............................................................11
        2.    Trinidad Foundry...................................................12
        3.    Expert Diesel .......................................................13
        4.    U.S. Maritime .......................................................13
        5.    North Offshore.....................................................14

    E.    Application To Jaldhi's Counter-Claims.................................14

i

| | 1. | Unpaid Hire: | 14 |
|---|---|---|---|
| | 2. | The Indemnity Claim For Potential Exposure To the Deceased Is Frivolous and Premature | 15 |
| | 3. | The Lost Profit Claim Is Frivolous And Premature | 15 |
| | 4. | Conclusion | 16 |

POINT IV....................................................................................................................................16

FURTHER, AND IN THE ALTERNATIVE, COUNTERSECURITY IS NOT
WARRANTED BECAUSE THE COUNTERCLAIM FOR LOST PROFIT
DOES NOT ARISE OUT OF THE SAME TRANSACTION OR OCCURRENCE
AS THE HIRE CLAIMS AND IS NOT A COMPULSORY COUNTERCLAIM...........16

POINT V .....................................................................................................................................18

COUNTERSECURITY IF PERMISSIBLE AGAINST A FOREIGN STATE,
SHOULD NOT EXCEED THE SUM ATTACHED.........................................................18

CONCLUSION............................................................................................................................21

.

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Afram Lines v. M/V CAPETAN YIANNIS*, 905 F.2d 347 (11th Cir. 1990)...............9

*Americas Bulk Transport Ltd. v. Volcano Shipping S.A.*, 2008 U.S. Dist.
LEXIS 4269 (S.D.N.Y. Jan. 18, 2008)...............................................................20

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434 (2nd Cir.
2006)..........................................................................................................5, 6, 7

*Banana Services Inc. et al. v. M/V PECAN et al.*, 1992 U.S. Dist. LEXIS
8822 (S.D.N.Y. 1992)........................................................................................9

*Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A.*, 2007 U.S.
Dist. LEXIS 18827 (S.D.N.Y. Feb. 27, 2007) .........................................8, 18, 19

*Consub Delaware LLC v. Schahin Engenharia Ltda.*, 2007 U.S. Dist.
LEXIS 10105 (S.D.N.Y. February 13, 2007)........................................................6

*Expert Diesel, Inc. v. Yacht FISHIN FOOL*, 627 F. Supp. 432 (S.D. Fla.
1986)................................................................................................................13

*Finecom Shipping Ltd. v. Multi Trade Enterprises AG*, 2005 U.S. Dist.
LEXIS 25761 (S.D.N.Y. Oct. 25, 2005) ............................................................19

*First National City Bank v. Banco Para El Comercio Exterior de Cuba*,
462 U.S. 611 (1983) ...........................................................................................5

*Front Carriers Ltd. v. Transfield ER Cape Ltd.*, 2007 U.S. Dist. LEXIS
85177 (S.D.N.Y. Nov. 16, 2007)........................................................................20

*General Tankers Pte Ltd. v. Kundan Rice Mills Ltd., et al.*, 475 F. Supp. 2d
396 (S.D.N.Y. 2007)...........................................................................................7

*Greenwich Marine, Inc. v. S.S. ALEXANDER*, 339 F.2d 901 (2d Cir. 1965).9,10,11

*HBC Hamburg Bulk Carriers GmbH v. Proteinas y Oleicos S.A.*, U.S.
Dist. LEXIS 8009 (S.D.N.Y. 2005) .....................................................................5

*Hercules Inc. v. Dynamic Export Corp.*, 71 F.R.D. 101 (S.D.N.Y. 1976).............17

*Incas & Monterey Printing & Packaging, Ltd. v. M/V SANG JIN*, 747 F.2d
958 (5th Cir. 1984), cert. denied sub nom *Van Weelde Brother Shipping
Ltd. v. I.N.C.A.S.*, 471 U.S. 1117 (1985) ............................................................ 16

*In re Louisville Underwriters*, 134 U.S. 488 (1890) .................................................. 6

*Mitsui Steamship Co. Ltd. v. Jarka Corp.*, 218 F. Supp. 424 (E.D.Penn.
1963) .................................................................................................................. 10

*Noble Shipping Inc. v. Euro-Maritime Chartering Ltd.*, 2003 U.S. Dist.
LEXIS 23008 (S.D.N.Y. 2003) ........................................................................... 6

*North Offshore AS v. Rolv Berg Drive AS*, 2007 U.S. Dist. LEXIS 876486
(S.D.N.Y. November 29, 2007) ........................................................................... 8

*Outbound Maritime Corp v. P.T. Indonesian Consortium*, 575 F. Supp.
1222 (S.D.N.Y. 1983) ......................................................................................... 4

*Pancoast Trading S.A. v. Eurograni S.R.L.*, 2008 U.S. Dist. LEXIS 4224
(S.D.N.Y. Jan. 22, 2008) ............................................................................. 19, 20

*Patricia Hayes & Associates, Inc. v. Cammell Laird Holdings U.K.*, 339
F.3d 76 (2d Cir. 2003) ................................................................................. 10, 11

*Pipeliners Local Union Number 798 v. Ellerd*, 503 F.2d 1193 (10th Cir.
1974) .................................................................................................................. 17

*Reeve v. America Broadcast Cos., Inc.*, 580 F. Supp. 84 (S.D.N.Y.), aff'd,
719 F.2d 602 (2d Cir. 1983) .............................................................................. 18

*Result Shipping Co. Ltd. v. Ferruzzi Trading U.S.A. Inc.*, 56 F.3d 394 (2d
Cir. 1995) ..................................................................................................... 20, 21

*Sea-Terminals, Inc. v. Independent Container Lines*, 89 Civ. 6931 (MBM),
1990 U.S. Dist. LEXIS 11561 (S.D.N.Y. Sept. 4, 1990) ................................... 16

*Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.*, 2006 U.S. Dist. LEXIS
83834 (S.D.N.Y. Nov. 17, 2006) ......................................................................... 6

*Seaplus Line Co. v. Bulkhandling Handymax AS*, 409 F. Supp. 2d 316
(S.D.N.Y. 2005) ................................................................................................. 16

iv

*Solomon v. Bruchhausen*, 305 F.2d 941 (2d Cir. 1962), cert. denied sub nom *Isbrandtsen v. Maximo,* 371 U.S. 951 (1963) ............................................16

*Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd.*, 478 F. Supp. 2d 532 (S.D.N.Y. 2007)...........................................................................................10, 11

*Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte Ltd.*, 531 F. Supp. 2d 586 (S.D.N.Y. 2008)............................................................................................20

*Titan Navigation v. Timsco*, 808 F.2d 400 (5th Cir. 1987).......................................9

*Trinidad Foundry v. M/V Kas Camilla*, 776 F. Supp. 1555 (S.D. Fla. 1991) 9,12,13

*U.S. Maritime Services, Inc. v. Trade Ventures, Inc., Number CIV. A. 98-0499*, 1998 WL 388669 (E.D. La. July 8, 1998).................................................13

*Verton Navigation Inc. v. Caribica Shipping, Ltd.*, 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. May 21, 1999) ..........................................................................20

*Voyager Shipholding Corp. v. Hanjin Shipping Co.*, 539 F. Supp. 2d 688 (S.D.N.Y. 2008)................................................................................................19

*Williams v. The Shipping Corporation of India*, 653 F.2d 875 (4th Cir. 1981)...........................................................................................................4

*Winter Storm Shipping, Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002)........................5, 6

*Ythan Ltd. v. America Bulk Transport Ltd.*, 336 F. Supp. 2d 305 (S.D.N.Y. 2004).......................................................................................................6, 11, 12

## FEDERAL STATUTES

28 U.S.C. § 1603(b) ...............................................................................................4

28 U.S.C. § 1609...............................................................................................5, 19

28 U.S.C. §§ 1610...................................................................................................5

46 U.S.C. app. 1702(3) ...........................................................................................4

## TREATISES
6 Wright & Miller, Federal Practice and Procedure: Civil § 1410, at 42 (1971) .................................................................................................................17

## PRELIMINARY STATEMENT

Plaintiff, The Shipping Corporation of India Ltd. ("SCI"), pursuant to a verified complaint dated May 7, 2008, as amended, obtained a process of maritime attachment and garnishment ("PMAG") pursuant to Supplemental Rule B For Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure ("Supplemental Rules") against JALDHI OVERSEAS PTE LTD. ("Defendant" or "Jaldhi"). Jaldhi now seeks by motion dated May 22, 2008 to vacate the attachment of such electronic fund transfers ("EFTs") of which it is the beneficiary in the sum of $4,406,521[1] leaving SCI secured only in the sum of $282,726 and, or, in the alternative, to obtain counter-security in the sum of $8,505,844 pursuant to Supplemental Rule E.

## THE FACTS

### A.    THE CHARTER

SCI chartered its vessel "M/V RISHIKESH" (the "Vessel") to Jaldhi by charter dated March 12, 2008 (the "Charter"). Aff. Ex. 1. The Charter provides for English law and London arbitration of disputes under it.

### B.    THE ACCIDENT

The Vessel was delivered to Jaldhi under the Charter on March 29, 2008. On March 30, 2008 the Vessel's crane No. 1 collapsed, as detailed in the accompanying declaration of Subir Majumdar dated May 28, 2008 ("Dec.") and its exhibits, leading to

---

[1] The sum of $126,971 was voluntarily released after Jaldhi's counsel provided requested account information. See Affidavit of Jeremy J.O. Harwood dated May 28, 2008 ("Aff.") Exs. 2 & 3.

1

the death of the crane operator, Sri Monoranjan Bera (the "Deceased"). Cargo operations were halted. Jaldhi placed the Vessel "off-hire."

## C.    JALDHI'S COUNTERCLAIMS

Jaldhi has not answered the Complaint or asserted verified counterclaims. Jaldhi's counterclaims are asserted solely in the declaration of Amit Oza dated May 22, 2008 ("Oza Dec.") and as such are procedurally deficient. See Appendix A hereto. The Oza Declaration is a hodge-podge of asserted facts based on unidentified "reports and documents" (¶ 3) and purported legal opinion. (¶¶ 4.2; 4.4 – 4.9; 5, 6). Jaldhi's memorandum of law dated May 22, 2008 ("Brief") beyond asserting that the counterclaims "are not frivolous" (Id. at 10-11) does not bother to identify or discuss them. They are as follows:

### 1.    Off-Hire: $4,764,095

As stated in the Oza Declaration, Jaldhi paid charter hire of $1,260,585. Id. (¶ 4.7). This payment was made on or about the date of the filing of SCI's original complaint, dated May 7, 2008. Accordingly, SCI amended its complaint to credit that sum and include the additional hire then owing as shown in Exhibit 2 to the Amended Complaint dated May 14, 2008.

Jaldhi seeks countersecurity not only for the hire that it has paid ($1,260,585) but also for the hire that it has not paid and in respect of which SCI has obtained security ($3,503,510).

SCI contends the Vessel came back "on-hire" on April 13, 2008 after its cranes passed load testing and that hire invoiced, except as might be conceded for the "off hire"

2

period between the crane breakdown and the acceptance of the Vessel's other cranes by HDC, is due and owing.

### 2.   "Lost Profit": $2 Million

Exhibit 6 to the Oza Declaration is a communication dated April 18, 2008 from a company called Rashmi Metaliks LLP ("Rashmi") whom Mr. Oza claims "had employed the vessel" for carriage of iron ore to China. Id., ¶ 4.10. Rashmi asserted, in material part:

> ...please note our losses...are approximately U.S. $2.00 million due to loss of buyers and fall in market. Kindly confirm that you will give us security for our claim by first [class] clean [sic] Bank Guarantees before loading of your vessel.

Oza Dec. Ex. 6.

The Oza Declaration does not provide the terms of contract between Jaldhi and Rashmi; any further communications by and between Jaldhi and Rashmi relating to the merits of the claim or otherwise or any suggestion that Jaldhi provided Rashmi the requested bank guarantees.

### 3.   **Wrongful Death: $1 Million**

The Oza Declaration asserts that Jaldhi is "potentially liable for any wrongful death claims" brought against it by the Deceased's estate. Id. ¶ 4.2. Mr. Oza is not an Indian lawyer. See Oza Dec. Ex. 1. His opinion on Jaldhi's potential liability is the subject of the Declaration.

The Deceased was employed by Haldia Dock Complex ("HDC"). Dec. ¶ 14, Ex. 1. HDC by letter dated March 30, 2008 wrote to the Vessel's Master stating, in material

3

part, that it "holds your ship solely responsible." Dec. Ex. 1. HDC, by letter dated April 2, 2008 again wrote to SCI demanding SCI's commitment to compensate the Deceased. Dec. ¶ 8, Ex. 3. SCI responded "confirm[ing] our agreement to pay death compensation to the legal heirs of the [D]eceased ... as may be found due by us under the provisions of the applicable law." Dec. Ex. 4.

## ARGUMENT

### POINT I

### SCI IS IMMUNE FROM ATTACHMENT

It is undisputed that SCI is an "agency or instrumentality of a foreign state" as defined in 28 U.S.C. § 1603(b). Accordingly, it is a "foreign state" See, Williams v. The Shipping Corporation of India, 653 F.2d 875, 876 (4th Cir. 1981) (SCI is "a corporation which is wholly owned by the Government of India" and is concededly a "foreign state" with the definition of the Foreign Sovereign Immunities Act ... which includes any corporate entity owned or controlled by a foreign state. [footnote omitted]").

The SCI webpage upon which Jaldhi relies, and from which it quotes, states:

> The SCI is a profitable commercial venture of Government of India ...

Wanchoo Dec. Ex. 7. Pursuant to 46 U.S.C. app. 1702(3) The Federal Maritime Commission ("FMC") has deemed SCI a "controlled carrier" owned by the Government of India. Aff. Ex. 1.

In the event that SCI's sovereign status is disputed, SCI requests the Court to provide it sufficient time to obtain evidence to supplement the record that the three business days for this opposition has curtailed. See Outbound Maritime Corp v. P.T.

4

Indonesian Consortium, 575 F. Supp. 1222, 1224 (S.D.N.Y. 1983) (defendant granted opportunity to provide competent evidence of sovereign status). SCI's sovereign status based on majority ownership by the Government of India should not, however, be the subject of any bona fide dispute.

> 28 U.S.C. § 1609 provides:
>
>> Subject to existing international agreements to which the United States is a party at the time of enactment of this Act the property in the United States of a foreign state shall be immune from attachment arrest and execution except as provided in sections 1610 and 1611 of this chapter.

No express or implied exception to immunity is stated in 28 U.S.C. §§ 1610 and 1611 permitting pre-judgment "attachment arrest and execution" either under Supplemental Rule B or, by way of a counter-claim, under Supplemental Rule E. The right to countersecurity under Supplemental Rule E against a "foreign state" would appear to be an issue of first impression. But see First National City Bank v. Banco Para El Comercio Exterior de Cuba, 462 U.S. 611 (1983).

## POINT II

### THE PMAG WAS PROPERLY ISSUED AND, PURSUANT TO SECOND CIRCUIT AUTHORITY, PROPERLY ATTACHED EFTS OF WHICH JALDHI WAS THE BENEFICIARY

The controlling law in this Circuit, presently, is that attachment of electronic funds transfers to or from a defendant is permissible. See, Winter Storm Shipping, Ltd. v. TPI, 310 F. 3d 263 (2d Cir. 2002); Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434 (2nd Cir. 2006) ("Aqua Stoli"); HBC Hamburg Bulk Carriers GmbH v. Proteinas

y Oleicos S.A., U. S. Dist. LEXIS 8009 (S.D.N.Y. 2005) (defendant beneficiary); see also, Ythan Ltd. v. Am. Bulk Transp. Ltd., 336 F. Supp. 2d 305 (S.D.N.Y. 2004); Noble Shipping Inc. v. Euro-Maritime Chartering Ltd., 2003 U. S. Dist. LEXIS 23008 (S.D.N.Y. 2003) (defendant beneficiary). But see Seamar Shipping Corp. v. Kremikovtzi Trade Ltd., 2006 U.S. Distr. LEXIS 83834 (S.D.N.Y. Nov. 17, 2006) (EFT's of which the defendant is the beneficiary are not property of defendant subject to Rule B attachment); Consub Delaware LLC v. Schahin Engenharia Ltda., 2007 U.S. Dist. LEXIS 10105 *13 (S.D.N.Y. February 13, 2007) ("Winter Storm remains good law and is binding on this Court" but certifying case (involving an "originator EFT") for appeal).

As this Court is well aware, dozens of Rule B actions are filed every month leading to issuance of Rule B orders in generally accepted wording, as reviewed by the judges in the Southern District, permitting attachment of beneficiary EFT's. Winter Storm noted that "[m]aritime attachment is centuries old." 310 F.3d at 267. Aqua Stoli, 460 F.3d 443, explained the necessity for such relief because:

> Maritime parties are peripatetic, and their assets often transitory. See In re Louisville Underwriters, 134 U.S. 488, 493 (1890)

It is precisely the risk of winning a Pyrrhic victory, after a lengthy arbitration against a "peripatetic" defendant who has made the award uncollectible, that makes Rule B a necessary and uniquely admiralty remedy. The same Rule B defendant, as was the case with Kremikovtzi, supra, may be subject to several, or as in that case four, separate Rule B actions. The random assignment of judges should not lead to a random allocation of a plaintiff's right to this "centuries old" remedy. If another Rule B plaintiff files suit,

6

even at a later date, and its action is randomly assigned to a different judge not only will it be able to attach Jaldhi's "beneficiary" EFTs but also claim a priority in time if an order from this Court vacating such attachments is reversed.[2]    Further, in such circumstances the Rule B plaintiff must hedge its bets by continuing to serve the PMAG, despite being fully secured subject to vacatur, in the hope of attaching an originator EFT thus adding to the expense and burden on garnishee banks.

Jaldhi's argument is nothing more than an attack on Winter Storm based on the Aqua Stoli "footnote" (460 F.3d at 446 n. 6) and an invitation to ignore the text of Aqua Stoli which expressly recognized the validity of Winter Storm, in stating:

> Under the law in this Circuit, EFTs to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction. [citing Winter Storm].

460 F.3d at 436. [emphasis added]

In General Tankers Pte Ltd. v. Kundan Rice Mills Ltd., et al., 475 F. Supp.2d 396, 397 (S.D.N.Y. 2007), the Court observed:

> While the [Aqua Stoli] footnote may query the appropriateness of any attachment of an EFT at an intermediate bank, whether against the originator or the beneficiary, it cannot be read unequivocally to overrule Winter Storm, nor to undermine the clear language of the balance of the decision in Aqua Stoli.

475 F.2d at 399. [emphasis added]

The Court concluded:

---

[2] Subject to the Court staying vacatur pending appeal.

> Hence, the current interpretation of Aqua Stoli - that EFTs to
> and from a party are attachable remains undisturbed.
> Therefore, the Court finds that Kundan Rice [defendant] had
> a property interest in the EFT from Zeyad to Kundan Rice
> and that the EFT was appropriately attached.

475 F.2d at 399.

The Consub appeal was heard this month and it is undisputed that only an en banc review can overrule Winter Storm absent a contrary Supreme Court decision or amendment to the Rule. This Court is clearly controlled by Winter Storm and Aqua Stoli. The Court should reject Jaldhi's invitation to disregard binding precedent in favor of "following its holding in Seamar Shipping" (Brief at 7) solely for the purpose of raising a challenge that the Second Circuit has already heard.

## POINT III

### IRRESPECTIVE OF SCI'S IMMUNITY JALDHI IS NOT ENTITLED TO COUNTER-SECURITY

**A.    The Standard Is Discretionary**

Judge Stein in North Offshore AS v. Rolv Berg Drive AS, 2007 U.S. Dist. LEXIS 87648*6 (S.D.N.Y. November 29, 2007) recognized that:

> "[n]othing … in Aqua Stoli disturbs the approach or suggests
> that a motion for countersecurity pursuant to Rule E(7) need
> only meet the prima facie requirements of an admiralty claim
> pursuant to Rule B. Rather motions for counter security
> remain - even post Aqua Stoli - subject to the 'broad
> discretion' of the Court." [citing] Clipper Shipping Lines
> Ltd. v. Global Transporte Oceanico S.A., 2007 U.S. Dist.
> LEXIS 18827 at * 3 (S.D.N.Y. Feb. 27, 2007).

8

**B.    Frivolous Counterclaims**

Judge Freeh in Banana Services Inc. et al. v. M/V PECAN et al., 1992 U.S. Dist.

LEXIS 8822 * 3-4 (S.D.N.Y. 1992) noted that "[a]lthough applying Admiralty Rule E(7)

[countersecurity] is discretionary, courts nevertheless look to well-established factors"

including:

> [T]he court should not require countersecurity where the
> counterclaim is frivolous or so lacking in merit that the court
> can only conclude that the counterclaim was advanced solely
> to secure a negotiating advantage over the complainant,
> [quoting] Titan Navigation v. Timsco, 808 F.2d 400, 404 (5th
> Cir. 1987) [citing] Afram Lines v. M/V CAPETAN
> YIANNIS, 905 F.2d 347 350 (11th Cir. 1990):

He further noted:

> Courts have denied Rule E(7) motions on grounds of frivolity
> when the evidence indisputably demonstrates the frivolity of
> the counter-claim.    See Trinidad Foundry v. M/V Kas
> Camilla, 776 F. Supp. 1555 (S.D. Fla. 1991) (counterclaim
> for unsatisfactory services was frivolous when there was
> notice executed by a representative of defendants explicity
> confirming that the services were satisfactorily completed).

Accordingly, courts in a variety of circumstances have refused to order the posting

of countersecurity where a counterclaim is frivolous, lacking in merit, or too speculative

to be entitled to the normal presumption that countersecurity is appropriate

Representative examples, discussed below, demonstrate how courts have addressed this

issue.

**C.    Contingent Indemnity Claims**

The touchstone case for any discussion as to when and whether a maritime

claimant's claim is premature to sustain an application for an attachment is Greenwich

9

Marine, Inc. v. S.S. ALEXANDER, 339 F.2d 901 (2d Cir. 1965). In Greenwich, the District Court was called upon to determine whether there was just cause for arresting and attaching the defendant vessel. The District Court held that the plaintiff's claim was premature. The Second Circuit agreed because "no judgment had been entered against Greenwich for the cargo damage, and no suit had been instituted against Greenwich for the cargo damage". Id. at 905. The Second Circuit affirmed.

The Second Circuit recognized that occasionally some district judges were willing, under certain circumstances, to ignore the prematurity of a claim, but "this does not mean that all doctrines of accrual have been abrogated in admiralty." Id. The Greenwich Court gave as an example the decision by Judge Kraft in Mitsui Steamship Co. Ltd. v. Jarka Corp., 218 F. Supp. 424 (E.D.Penn. 1963) in which an indemnity cause of action in a maritime case was dismissed for failure to state a cause of action because it was premature and "nothing more than an abstraction" **even though** suit against the party seeking indemnification was pending in another court. Greenwich, 339 F.2d at 905.

In Patricia Hayes & Assocs., Inc. v. Cammell Laird Holdings U.K., 339 F.3d 76, 82-83 (2d Cir. 2003), the Court held that "a district court may in some circumstances disregard the prematurity of a plaintiff's claim as a matter of discretion" (emphasis in original).

In Sonito Shipping Co. Ltd. v. Sun United Maritime Ltd., 478 F. Supp. 2d 532, 540-41 (S.D.N.Y. 2007), however, the Court found that "courts in this circuit have not been receptive to contingent indemnity claims as bases for maritime arrests [or] attachments" and found that to the extent that the Court still has discretion to disregard

10

the prematurity of a plaintiff's claim, such discretion "should only be exercised under compelling circumstances". Id. at 543-44.

Indeed, the <u>Greenwich</u> Court noted that objections to prematurity are ignored "only in isolated situations under peculiar factual circumstances." <u>Greenwich</u>, 339 F.2d at 905. Such a peculiar factual circumstance may arise where a claim might have been premature when filed but was certain to mature shortly (<u>i.e.</u>, within a matter of hours), as was the case in <u>Patricia Hayes</u>, 339 F.3d at 82-83. The time to measure whether a claim is "ripe enough" to sustain an attachment is as of the time of the filing of the complaint. Absent such a fairly anticipated maturity of a claim within a very brief period of time, the <u>Greenwich</u> Court held that later events, including the protraction of litigation, cannot serve to ripen a claim that was premature at the time the application for the attachment was made. <u>Greenwich</u>, 339 F.2d at 908-909 ("a concern for future cases leads us to squelch all hope that a litigation may become sufficiently protracted so as to enable a premature claim to ripen just before judgment is rendered on appeal").

D.    **Cases Applying The Principles**

1.    **YTHAN**

In <u>Ythan Ltd. v. Americas Bulk Transport Ltd.</u>, 336 F. Supp. 2d 305 (S.D.N.Y. 2004), the defendant sought $4.4 million in countersecurity on a cargo indemnity claim. Id. at 309. In denying that portion of the defendant's countersecurity request, the court ruled that the "highly contingent" nature of the defendant's claim made posting of such countersecurity inappropriate:

11

> I decline to require security on the cargo indemnity claim ($4,400,000) because the claim is highly contingent and Ythan has already posted security for claims brought directly by the cargo owners against it. ***The fact that a claim against Americas Bulk by the cargo owners for which Americas Bulk may seek to hold Ythan liable may not be entirely foreclosed does not mean that there is a serious prospect of such liability.***

Id. at 309 (emphasis added).

### 2.   **Trinidad Foundry**

In Trinidad Foundry & Fabricating, Ltd. v. M/V KAS CAMILLA, 776 F. Supp. 1555 (S.D. Fla. 1991), the plaintiff arrested the defendant vessel in connection with its claims for repairs and necessaries. Id. at 1556. The defendant shipowner counterclaimed for damage to the vessel due to the plaintiffs negligence, breach of warranty, and breach of contract and applied to the court for countersecurity under Rule E(7). Id. at 1558. In its application, the defendant contended that the plain language of Rule E(7) required the plaintiff to post countersecurity. Id. The court disagreed and, after examining the facts surrounding defendant's purported "counterclaim," refused to order the posting of countersecurity:

> [Defendant] argues that the plain language of Rule E(7) requires Plaintiff to post a bond or other security on the Counterclaims filed in this action. The Court is not persuaded by Defendant's reasoning in this regard. Rule E(7) mandates the posting of countersecurity in the instant unless the Court, for cause shown, directs otherwise. In the present case, ***Defendants' authorized representative executed Plaintiff's Notice of Repairs Satisfactorily Completed, confirming that the repairs performed by Plaintiff to the Vessel had been satisfactorily completed. The Undersigned believes that this fact alone indicates that Defendants' Counterclaims may be***

12

*frivolous, and constitutes sufficient cause shown to remove the presumption of countersecurity dictated by Rule E(7).*

Id. (emphasis added).

### 3. **Expert Diesel**

In Expert Diesel, Inc. v. Yacht FISHIN FOOL, 627 F. Supp. 432 (S.D. Fla. 1986), the court refused to grant the defendants' request for countersecurity on counterclaims similar to those asserted by the defendant in KAS CAMILLA. See id. In so holding, it stated that "the court is reluctant to compel Plaintiff to post a bond in light of Defendants' damage claims of a general, rather than a precisely detailed, nature." Id. at 433.

### 4. **U.S. Maritime**

In U.S. Maritime Services, Inc. v. Trade Ventures, Inc., No. CIV. A. 98-0499, 1998 WL 388669 (E.D. La. July 8, 1998), the defendants counterclaimed for damages arising out of an alleged lost charter party. Id. at *2. In denying the defendants' motion for countersecurity, the court ruled that the counterclaim was too speculative and insufficiently supported to justify an order directing the posting of countersecurity:

> the defendants' claim for the alleged lost charter is too speculative to sustain an order for countersecurity. *Unlike plaintiffs claim which is based on past events reasonably able to be ascertained and quantified, defendants' losses due to a 'road not taken' cannot be so readily ascertained and quantified. The Baldwin affidavit is insufficient by itself to determine what the defendants estimated actual loss is after expenses and other items are deducted, even assuming the voyage would have occurred but for the plaintiff's alleged broken agreement.*

Id. (emphasis added).

13

683622.00601/6640293v.1

### 5.    North Offshore

In North Offshore, supra, the court reviewed the above decisions and denied countersecurity because, inter alia, it would not put "the parties on the 'equal footing' that Rule E(7) seeks to promote, but rather would serve to thwart the purpose of North Offshore's Rule B attachment." Id. at *9.

### E.    Application To Jaldhi's Counter-Claims

#### 1.    Unpaid Hire:

Irrespective of the fact that Jaldhi's "counterclaims" are advanced solely in a declaration, the above standards of frivolousness, lack of merit, and prematurity apply to all the counterclaims except for hire actually paid. Jaldhi was invoiced for hire of the Vessel from March 29 to May 13, 2008 in the sum of $1,350,000. On or about May 7, 2008 Jaldhi paid a hire installment in the sum of $1,260,585. SCI issued a fourth hire statement dated May 13, 2008, crediting the prior payment and showing a balance owing of $3,503,610. Amended Complaint, ¶ 8, Ex. 2. That sum is SCI's principal claim for which the attachment has been obtained. Clearly if SCI had already been paid that sum it would not be seeking to "double secure" itself by attaching the same amount in respect of the same claim. That is, however, exactly Jaldhi's position (in reverse). It claims that despite having failed to pay the balance of hire it is entitled to countersecurity for the sum that it has withheld. The argument and counterclaim is frivolous: a party cannot seek countersecurity for sums that it claims no obligation to pay and has not done so. Any "off-hire" counterclaim is limited to the sums actually paid in respect of the off-hire asserted.

14

The reasonable off-hire period here is from March 30, 2008 (1910), when the crane broke down, to the end of the period for which hire was paid, April 13 (13 days, 6 hours, 20 minutes) for a hire sum (net of commission) of $1,021,319.53). In any event, Jaldhi's "off-hire" countersecurity, if permissible (which is denied), cannot exceed the sum it has paid, $1,260,585 plus interest and "costs".

### 2.    The Indemnity Claim For Potential Exposure To the Deceased Is Frivolous and Premature

Jaldhi claims countersecurity of $1,000,000 as indemnity in the belief that the Deceased was its employee. SCI's letter dated April 2, 2008 states in material part that:

> . . . we [SCI] hereby confirm our agreement to pay death compensation to the legal heirs of the deceased … as may be found due by us under the provisions of the applicable law.

Dec. Ex. 4.

The potential liability is not expected to exceed $75,000. Dec. ¶ 21. The assertion of a contingent indemnity liability of as much as $1 million, when neither HDC nor the Deceased have even suggested Jaldhi may be liable but have, to the contrary asserted SCI's liability, "does not mean that there is a serious prospect of such liability."

### 3.    The Lost Profit Claim Is Frivolous And Premature

As described in the Oza Declaration, the "Loss of Profit" claim is "[i]n the event [that Jaldhi] is held liable to the shippers…". Id., ¶ 4.12. It is quite clearly a contingent indemnity claim. Moreover, it appears on its face to be entirely without merit. The claim is, as was the "lost charter" profit claim in U.S. Maritime, supra, "too speculative." No attempt whatsoever has been made to show how the claim is quantified. Despite having

15

been advanced by Rashmi over a month ago. The Oza Declaration fails to provide any details of how the claim is calculated or even whether it is contested. It is conspicuously silent on Rashmi's demand for security from Jaldhi.

### 4.  Conclusion

The counterclaims here, with the exception noted, palpably appear to have been advanced solely to secure a negotiating advantage.

**POINT IV**

**FURTHER, AND IN THE ALTERNATIVE, COUNTERSECURITY IS NOT WARRANTED BECAUSE THE COUNTERCLAIM FOR LOST PROFIT DOES NOT ARISE OUT OF THE SAME TRANSACTION OR OCCURRENCE AS THE HIRE CLAIMS AND IS NOT A COMPULSORY COUNTERCLAIM**

Supplemental Rule E(7) is identical to Rule 13(a) of the Federal Rules of Civil Procedure in that it only permits countersecurity for counterclaims that are compulsory. Sea-Terminals, Inc. v. Independent Container Lines, 89 Civ. 6931 (MBM), 1990 U.S. Dist. LEXIS 11561, *5 (S.D.N.Y. Sept. 4, 1990). Accordingly, when determining whether a counterclaim arises "out of the same transaction or occurrence" under Rule E(7), courts will apply the test for compulsory counterclaims under Rule 13(a). See Incas & Monterey Printing & Packaging, Ltd. v. M/V SANG JIN, 747 F.2d 958, 964-65 (5th Cir. 1984), cert. denied sub nom Van Weelde Brother Shipping Ltd. v. I.N.C.A.S., 471 U.S. 1117 (1985); Solomon v. Bruchhausen, 305 F.2d 941 (2d Cir. 1962), cert. denied sub nom Isbrandtsen v. Maximo, 371 U.S. 951 (1963); Seaplus Line Co. v. Bulkhandling Handymax AS, 409 F. Supp. 2d 316, 324 (S.D.N.Y. 2005) (stating that "counterclaims

16

falling within the purview of Supplemental Rule E(7) are akin to compulsory counterclaims under Rule 13(a)"), overruled on other grounds by Aqua Stoli, 460 F.3d at 445.

Jaldhis' purported indemnity counterclaim for "loss of profit" does not arise from the "same transaction or occurrence" as the hire claims under the Charter. Hence it is not a mandatory counterclaim entitled to countersecurity under Supplemental Rule E(7). The counterclaim is not compulsory even under the liberal standard applied by numerous courts whereby counterclaims arising out of the same contract as the plaintiff's claim are found to be compulsory. See, e.g., Hercules Inc. v. Dynamic Export Corp., 71 F.R.D. 101, 109 n. 10 (S.D.N.Y. 1976) (collecting cases). Indeed, Jaldhi fails to satisfy any of the standards suggested by most courts when considering the compulsory or permissive nature of specific counterclaims, which are as follows:

> (1) Are the issues of fact or law raised by the claim and counterclaim largely the same?;
>
> (2) Will substantially the same evidence support or refute plaintiff's claim as well as defendant's counterclaim?;
>
> (3) Is there any logical relation between the claim and counterclaim?; and
>
> (4) Would res judicata bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule?

Id. (citing Pipeliners Local Union No. 798 v. Ellerd, 503 F.2d 1193, 1198-99 (10th Cir. 1974); 6 Wright & Miller, Federal Practice and Procedure: Civil § 1410, at 42 (1971)). Rashmi's alleged $2 million damages for "loss of our buyers and fall in the market" (Oza

17

Dec. Ex. 6) (under whichever applicable law is applicable to it) does not satisfy considerations (1), (2) and (4) above.

Under the logical relation test (point (3)) applied in the Second Circuit and elsewhere, a court "must analyze whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issue be resolved in one lawsuit." Reeve v. Am. Broad. Cos., Inc., 580 F. Supp. 84, 88 (S.D.N.Y.), aff'd, 719 F.2d 602 (2d Cir. 1983) (citation omitted) . That is not the case here. To the contrary, if Rashmi has a valid claim against Jaldhi, it is doubtless subject to a law and jurisdiction/arbitration provision that will ensure that it is not "resolved in one lawsuit."

**POINT V**

**COUNTERSECURITY IF PERMISSIBLE AGAINST A FOREIGN STATE, SHOULD NOT EXCEED THE SUM ATTACHED**

The verbatim argument asserted by Jaldhi in reliance on Moore Federal Practice (Brief at 12) was considered by Judge Leisure in Clipper Shipping Lines, Ltd., v. Global Transporte Oceanico S.A. 2007 U.S. Dist. Lexis 18827 (S.D.N.Y. Feb. 26, 2007), a decision that Jaldhi inexcusably fails to cite along with the numerous cases that have cited it since, including its own on the issue.[3] Jaldhi's "race to the courthouse" argument is the same as Global's (made by undersigned counsel) that "its right to security for its claim should not be limited simply because the claim was brought as a counterclaim

---

[3] Point I of the Brief is addressed in the Affidavit and Exhibits 2 and 3. Jaldhi appears to concentrate on creating an issue where there is none while failing to heed the admonition to refer the Court to its contrary decisions.

18

rather than as an original claim." Id. at *6. The "appeal," let alone merit, of the argument is undercut by the fact that, under 28 U.S.C. §1609, Jaldhi would not have been able to attach SCI's EFTs or other assets in the first place.

> Moreover, Judge Leisure ruled:

>> Judge Lynch's approach in *Finecom Shipping* is the most appropriate here. This is so in part because the value of Global's counterclaim is not substantially different from the value of Clipper's original claim. Accordingly, ensuring that the parties are secured for the same amount will "place the parties on an equality as regards security," *Result Shipping*, *56 F.3d at 399*. To order that Clipper post security for the full value of Global's counterclaim would not achieve equality because Global has not posed security for the full value of Clipper's claim against it. It is worth noting that Clipper does not claim that the costs of posting countersecurity will be burdensome.

Id. at * 5.

In Voyager Shipholding Corp. v. Hanjin Shipping Co., 539 F. Supp. 2d 688, (S.D.N.Y. 2008) Voyager attached $242,075 and Hanjin sought countersecurity of $388,157. 539 F. Supp. 2d at 690. Judge Lynch noted that decisions had varied, citing Clipper Shipping Lines, supra and Finecom Shipping Ltd. v. Multi Trade Enters AG, 2005 U.S. Dist. LEXIS 25761 (S.D.N.Y. Oct. 25, 2005) as cases limiting countersecurity to the sum successfully attached, compared to Pancoast Trading S.A. v. Eurograni S.R.L., 2008 U.S. Dist. LEXIS 4224 (S.D.N.Y. Jan. 22, 2008) where the counterclaimant was not limited.[4] He concluded that "the different views" are "rooted in the essentially

---

[4] In Pancoast, the defendant asserted a "slightly larger" counterclaim. Id. at *2. The Court stated that the defendant, had it "filed first,, it would surely have been entitled to a Rule B attachment fully securing its claim." Id. at *3. The Decision is therefore distinguishable.

19

discretionary and fact-bound nature of countersecurity orders." Id. at 692-693. Hanjin's countersecurity was, nevertheless, limited to the sum attached because, inter alia, "awarding disproportionate amounts of security to the counterclaimant will itself unbalance the parties' strengths." Id. at 693. See also Ams. Bulk Transp. Ltd. v. Volcano Shipping S.A., 2008 U.S. Dist. LEXIS 4269 (S.D.N.Y. Jan. 18, 2008) (same); Tang Kheok HWA Rosemary v. Jaldhi Overseas Pte Ltd., 531 F. Supp. 2d 586, (S.D.N.Y. 2008); Front Carriers Ltd. v. Transfield ER Cape Ltd., 2007 U.S. Dist. LEXIS 85177 (S.D.N.Y. Nov. 16, 2007) (same).

In Tang Kheok, supra, the plaintiff ultimately sought and obtained Rule B security in the sum of $426,784. Id. at *5. Jaldhi answered and counterclaimed and sought countersecurity in the principal sum of $2,935,464. Judge McMahon, while not finding the counterclaims to be frivolous, nevertheless held "the countersecurity sought by Jaldhi to be excessive." 531 F. Supp. 2d at 590. She stated:

> It is a well-settled principle that where a court finds countersecurity to be appropriate, it should be limited to the amount that claimant has attached. [citing Clipper, supra, and Finecom, supra].

531 F. Supp. 2d at 590.

Jaldhi relies on Verton Navigation Inc. v. Caribica Shipping, Ltd., 1991 U.S. Dist. LEXIS 6722 (S.D.N.Y. May 21, 1999). In Verton the Rule B plaintiff attached $195,423. Defendant sought countersecurity in the sum of $338,850 which was ordered "there being no contention that defendant's counterclaim is frivolous …" Id. at * 5. If a "foreign state" can be ordered to provide Rule E countersecurity which is denied, on the basis that

20

the counterclaimant lost "the race to the Court house" (which argument is inapplicable) the weight of case law in this District is that the countersecurity cannot exceed the sum actually attached. Here Jaldhi while proposing a reduction of security to $282,726 makes no attempt to suggest its request for $8,505,844 can possibly justify either of Rule E's "two principles" as set out in Result Shipping Co. Ltd. v. Ferruzzi Trading U.S.A. Inc., 56 F.3d 394, 399-400 (2d Cir. 1995) "to place the parties on an equality as regards security [citing Titan Navigation; supra] ... especially when the counterclaimant could have proceeded in rem or quasi in rem in an independent suit," which is not the case here, and not to "impose burdensome costs on a plaintiff that might prevent it from bringing suit [citing Titan]" which seems to be Jaldhi's goal.

## CONCLUSION

In the circumstances, Plaintiff respectfully request this Court to deny the Motion in its entirety and grant such other and further relief as it may deem just.

Dated: New York, NY
        May 28, 2008

> BLANK ROME LLP
> Attorneys for Plaintiff
> THE SHIPPING CORPORATION OF
> INDIA, LTD.
>
> By: _____
> Jeremy J. O. Harwood (JH 9012)
> The Chrysler Building
> 405 Lexington Avenue
> New York, NY 10174-0208
> Tel.: (212) 885-5000
> Fax: (212) 885-5001

21

# APPENDIX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
ALLIED MARINE SERVICES LTD.,

Plaintiff,

-against-                                                          06 Civ. 3641 (LAK)

LMJ INTERNATIONAL LTD.,

Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## ORDER

LEWIS A. KAPLAN, *District Judge.*

This is an action in admiralty to enforce an award issued in a London arbitration relating to a maritime shipping dispute. Defendant moves to vacate the order of maritime attachment and dismiss the complaint. Defendant also seeks countersecurity for claims it has asserted against plaintiff in court in India.

Defendant's motions are denied for reasons substantially set forth on the record in open court. What remains is to set forth the reasons for denial of defendant's claim regarding the attachment of funds during an electronic transfer and to rule on the request for countersecurity.

*EFTs*

Funds being transferred electronically from one bank to another during an electronic funds transfer ("EFT") pass through intermediary banks if "the originating bank and the destination bank are not members of the same wire transfer system." *Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd.*, 460 F.3d 434, 436 n.1 (2d Cir. 2006). In *Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002), the Second Circuit held that EFTs in the possession of such "intermediary" banks can be attached pursuant to a maritime attachment order.[1]

_____

[1]

Although a recent Second Circuit decision questioned the correctness of *Winter Storm*'s holding that "EFTs are property of the beneficiary or sender of an EFT," rather than the property of neither while present in an intermediary bank, *Aqua Stoli*, 460 F.3d at 445 n.6,

2

Defendant contends that plaintiff's two attachments of EFT funds were improper because the funds were attached while at "the correspondent banks for the [third-party] beneficiaries' respective banks," after having been processed through defendant's banks and "defendant's banks' correspondent banks." Def. Reply 2-3. Defendant argues the funds thus were "not in the care, custody, possession or control of the defendant" at the time of attachment. *Id.* at 3.

Neither *Winter Storm* nor subsequent cases have distinguished among "intermediary" banks as defendant tries to do. *See, e.g., Aqua Stoli*, 460 F.3d at 436 n.1 ("*Winter Storm* permitted the attachment of funds while those funds are in an intermediary bank temporarily as a credit before being passed through to the beneficiary of the transaction or another intermediary bank."). Thus, the Court is not persuaded that defendant's distinction is material.

*Countersecurity*

Supplemental Admiralty Rule E(7) authorizes a court to order countersecurity "[w]hen a person who has given security for damages in the original action asserts a counterclaim that arises from the transaction or occurrence that is the subject of the original action . . . ."

Although defendant has asserted claims against plaintiff in an Indian court relating to the same underlying dispute, it has not "assert[ed] a counterclaim" in this action. The Court therefore cannot order countersecurity. Accordingly, defendant's request for countersecurity is denied.

SO ORDERED.

Dated:        December 8, 2006

Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

_____

*Winter Storm* remains binding in this Circuit.