UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

THE SHIPPING CORPORATION OF INDIA, LTD.

     Plaintiff,

    - against -

JALDHI OVERSEAS PTE LTD.

     Defendant.

-------------------------------------------------------------X

ECF CASE

08 Civ 4328 (JSR)

## REPLY MEMORANDUM OF LAW IN SUPPORT
## OF DEFENDANT'S MOTION TO VACATE OR
## <u>MODIFY ATTACHMENT AND FOR COUNTER-SECURITY</u>

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone:  (646) 593-8866
Fax:      (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com

Of Counsel

Rahul Wanchoo, Esq.

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT..................................................................................................... 1

REPLYING TO THE FACTS............................................................................................. 1

JALDHI'S COUNTER-CLAIMS...................................................................................... 1

      1.      Off hire.................................................................................................. 2
      2.      Lost Profit............................................................................................. 2
      3.      Wrongful Death.................................................................................... 3

LEGAL ARGUMENT....................................................................................................... 3

POINT 1........................................................................................................................... 3

      SCI HAS WAIVED ITS DEFENSE OF SOVEREIGN IMMUNITY AS TO
      JALDHI'S COUNTERCLAIMS................................................................... 3

POINT NO.II.................................................................................................................... 4

      THE COURT SHOULD FOLLOW ITS RULING IN SEAMAR AND HOLD
      THAT AN EFT IS NOT PROPERTY OF THE DEFENDANT-BENEFICIARY
      SUBJECT TO ATTACHMENT UNDER RULE B......................................... 4

POINT NO. III.................................................................................................................. 6

JALDHI IS ENTITLED TO COUNTER-SECURITY............................................... 6

      1.      Jaldhi's Counterclaims are not Frivolous............................................. 7
      2.      Jaldhi's Counterclaims are not premature............................................ 8
      3.      Authority Relied upon by SCI is Inapplicable...................................... 9
      4.      The Counterclaim Exception to Sovereign Immunity Permits Equivalent
           Security........................................................................................... 11

CONCLUSION................................................................................................................ 11

## TABLE OF AUTHORITIES

**Cases**

Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd. , 560 F. 3d 434 (2d Cir.
2006)…………………………………………………………………………   4, 5

Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A., 2007 U.S. Dist.
LEXIS 18827, *4-5
(S.D.N.Y.2007)…………………………………………………………………   10

Det Bergenske Dampskibsselskab v. Sabre Shipping Corp., 341 F.2d 50, 52-53 (2d Cir.
1965)……………………………………………………………………………   5

Expert Diesel v. Yacht FISHIN FOOL, 627 F. Supp. 432 (S.D. Fla. 1986)……………..   9

Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25671
(S.D.N.Y. 2005). ……………………………………………………………   7, 11

First National Citibank v. Bank Nacional de Cuba, 406 U.S. 759 (1972) ……………….   4

Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren,  485 F. Supp. 399, 404
(S.D.N.Y. 2007)………………………………………………………………...   8

North Offshore AS v. Rolv Berg Drive AS, 2007 U.S. Dist. LEXIS 87648 (S.D.N.Y.
2007)……………………………………………………………………………   10

In re Oil Spills by the  Amoco Cadiz, 491 F. Supp. 161 (N.D. Ill. 1979)……………….   8

Reibor Int'l Ltd. v. Cargo Carriers (KACz-Co.) Ltd.  759 F. 2d 262 (2d Cir. 1985). ……   5


Seamar Shipping Corp. v. Kremikovtzi Trade Ltd.  461 F. Supp. 2d 222 (S.D.N.Y.
2006)……………………………………………………………………………   4, 5

Staronset Shipping Ltd. v. Northstar Navigation 659 F. Supp. 189, 191 (S.D.N.Y.
1987). ……………………………………………………………………………   8

Titan Navigation Inc. v. TIMSCO Inc. 808 F. 2d 400, 404 (5th Cir. 1987)……………   10

Trinidad Foundry and Fabricating Ltd. v. M/V KAS CAMILLA, 776 F.Supp. 1555
(S.D. Fla. 1991),………………………………………………………………   9

United States v. Aquavella, 615 F. 2d 12, 22 (2d Cir. 1980) ………………………….   6

U.S. Maritime Services Inc. v. Trade Ventures Inc., 1998 U.S. Dist. LEXIS 10608 (E.D.

La. 1998)……………………………………………………………………………….    10

Winter Storm Shipping, Ltd. v. TPI, 310 F. 3d 263, 278 (2d Cir. 2002)…………………    4, 5

Ythan Ltd v. Americas Bulk Transport Ltd., 336 F. Supp. 2d 305 (S.D.N.Y. 2004) ……    9

**Statutes and Rules**

Fed. R. Civ. P. Supplemental Rules for Certain Admiralty & Maritime Claims, Rule B..    1

Fed. R. Civ. P. Supplemental Rules for Certain Admiralty & Maritime Claims, Rule
E(7)…………………………………………………………………………………………..    1

Foreign Sovereign Immunities Act, 28 U.S.C. §1607……………………………………    3, 6

New York Uniform Commercial Code, §4-A-502………………………………………..    5

## PRELIMINARY STATEMENT

Defendant JALDHI OVERSEAS PTE. LTD., ("Jaldhi" or "Defendant") respectfully submits this Reply Memorandum of Law ("Reply") in reply to Plaintiff, THE SHIPPING CORPORATION OF INDIA, LTD.'s ("SCI" or "Plaintiff") Memorandum of Law in Opposition ("Opp. Brief") and in further support of its motion to vacate/modify this Court's Order of Maritime Attachment dated May 7, 2008 and for Counter-Security pursuant to Rule E(7) of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure (hereinafter "Rule E(7)").

In the present motion, Jaldhi has presented counterclaims for counter-security. The counterclaims arise out of the same transaction as the claims of SCI, and the counterclaims are not frivolous and SCI has waived its defense of sovereign immunity as to the counterclaims. Principles of equity mandate that counter-security should be granted to Jaldhi in full or, in the alternative, in an amount equal to that attached by SCI.

## REPLYING TO THE FACTS

The facts relating to this Reply are fully detailed in the Memorandum of Law, the accompanying declaration of Amit Oza ("Oza Decl.") and the affidavit of Rahul Wanchoo ("Wanchoo Aff.") filed by Jaldhi on May 22, 2008, and are not reiterated for the sake of brevity, and the contents of the same be read part and parcel of this motion.

## JALDHI'S COUNTER-CLAIMS

On June 1, 2008, Jaldhi filed a Verified Answer and Counter-Claim within the thirty days prescribed by Rule B (3)(b). A copy of Jaldhi's Verified Answer and Counter-Claim is attached hereto as Appendix A.

1. **Off hire**

As stated by Mr. Oza in his declaration "the fact that the No.1 crane collapsed nearly six hours after Plaintiff delivered the Vessel to the Defendant shows a strong likelihood that the Vessel was unseaworthy when she was delivered into Charter." *Oza Decl. ¶3.6.* Jaldhi disputes SCI's contention that the Vessel came back "on hire" on April 13, 2008 after its cranes allegedly passed a load testing *(Opp. Brief at 2)*. In fact, the Vessel did not return to her loading berth until May 30, 2008 and it is Jaldhi's position that the Vessel was off-hire during the entire period from March 30, 2008, when the crane collapsed, until May 30, 2008 when the Vessel was alongside at the same or similar berth from where she was taken out of Defendant's service.

Notwithstanding the fact that the Vessel was taken out of service on or about March 30 and no hire was payable to SCI, SCI has attached Defendant's funds as security for its hire until May 28, 2008 in the amount of $3,503,510.00. *Oza Decl. ¶4.9.* Unless the Court vacates SCI's attachment in the amount of about $3.5 million, Jaldhi claims counter-security in the same amount for which SCI has obtained security by way of attachment of its funds on account of hire, which clearly was not earned by SCI during the period that it suspended its service.

2. **Lost Profit.**

Jaldhi agrees that its claim for loss of profit claimed by the shipper is an indemnity claim which has not yet crystallized. *Oza Decl. ¶4.10 to 4.12.* However, that does not negate the fact that SCI's breach of the charter party has resulted in the shipper's alleged losses which are presently estimated at about $2 million. *Oza Decl., Exhibit 6.* The Vessel is presently loading her cargo and will be proceeding to the discharge port where she will deliver the cargo to the receivers almost two months late in a falling market. Accordingly, Jaldhi asserts that it is entitled to its claim for counter-security for shipper's loss of profit claim in the amount of $2 million.

### 3.    **Wrongful Death**

As SCI has now produced a letter dated April 2, 2008 annexed to the declaration of Mr.

Majumdar which "confirms [their] agreement to pay death compensation to the legal heirs of the

deceased [crane operator]", Jaldhi withdraws its counterclaim for wrongful death of the crane

operator. Surprisingly, Jaldhi has only learnt during the course of these proceedings that SCI has

assumed responsibility for the wrongful death claim. The fact that SCI has assumed liability for

the crane collapse which caused the death of the crane operator belies its argument that hire

should be paid for the period that the Vessel was out of Defendant's service because the Vessel

was not unseaworthy.

### LEGAL ARGUMENT

### POINT NO. 1

### SCI HAS WAIVED ITS DEFENSE OF SOVEREIGN IMMUNITY AS TO JALDHI'S COUNTERCLAIMS

SCI's argument that it is immune from attachment because it is an "agency or

instrumentality of a foreign state" is a red herring because it is SCI who commenced the Rule B

attachment proceedings in the Southern District of New York and NOT Jaldhi.  SCI's counsel

also admits that it incorrectly asserted in its Opposition Brief that there was no exception to the

immunity with respect to Jaldhi's counter-claim.  (See SCI's counsel's letter to the Court of May

29, 2008).  In fact, §1607 of the Foreign Sovereign Immunities Act explicitly states in pertinent

part:

> In any action brought by a foreign state, or in which a foreign state intervenes, in
> a court of the United States or of a State, the foreign state shall not be accorded
> immunity with respect to any counterclaim.
>
> (b) arising out of the transaction or occurrence that is the subject matter of the
> claim of the foreign state; or

(c) to the extent that the counterclaim does not seek relief exceeding in amount or differing in kind from that sought by the foreign state.

28 U.S.C. § 1607 *(emphasis added)*. In re Oil Spill by the Amoco Cadiz, 491 F. Supp. 161 (N.D.

Ill. 1979), the Court held that the Republic of France had waived its defense of sovereign

immunity when it filed its claims in the U.S. courts and where the defendants' counter-claims

arose from the same "transaction or occurrence" within the meaning of 28 U.S.C.§ 1607. The

Illinois court stated:

> [T]o allow the Republic of France to litigate its claims in this country and to cloak itself with immunity, based on the act of State doctrine, as to counterclaims and third party claims, would be unjust.  Citing First National Citibank v. Banco Nacional de Cuba, 406 U.S. 759 (1972).

*Id.* at 169. In the present case, SCI has filed a verified complaint and obtained an *ex parte* order

of maritime attachment ("Attachment Order") from this Court and consequently has waived its

defense of sovereign immunity with respect to Jaldhi's counterclaims that arise out of the same

transaction or occurrence that is the subject matter of SCI's claim.  Thus, SCI's argument that it

is immune from attachment has absolutely no merit.

## POINT NO.II

### THE COURT SHOULD FOLLOW ITS RULING IN SEAMAR AND HOLD THAT AN EFT IS NOT PROPERTY OF THE DEFENDANT-BENEFICIARY SUBJECT TO ATTACHMENT UNDER RULE B

SCI argues that this Court is "clearly controlled" by Winter Storm Shipping, Ltd. v. TPI,

310 F. 3d 263, 278 (2d Cir. 2002) ("Winter Storm") and Aqua Stoli Shipping Ltd. v. Gardner

Smith Pty Ltd. , 560 F. 3d 434 (2d Cir. 2006) (Áqua Stoli"), which held attachment of electronic

funds transfers to or from a defendant is permissible *(Opp. Brief at 8)*.  Jaldhi respectfully

submits that this Court should interpret the Second Circuit precedents in this case as it did in

Seamar Shipping Corp. v. Kremikovtzi Trade Ltd. 461 F. Supp. 2d 222 (S.D.N.Y. 2006) ("Seamar").

After stating that footnote 6 in Aqua Stoli "raises a serious question whether Winter Storm's implicit holding that EFT's may be considered to be a defendant's property while in transit remains good law" (461 F. Supp. 2d at 224), this Court recognized, as one must, that the Second Circuit panel in Aqua Stoli stated that "EFT's to or from a party are attachable by a court as they pass through banks located in that court's jurisdiction." Seamar, 461 F. Supp. 2d at 225 (quoting Aqua Stoli, 460 F. 3d at 436). However, the Seamar court went on to state that "there is a more narrow question at issue in this case: whether an EFT can be attached under Rule B(1)(a) where the defendant [as was the case there and here] is the intended beneficiary of the EFT, rather than the originator [as was the case in Winter Storm]." 461 F. Supp. 2d at 225. Given the Second Circuit's statement in footnote 6 and the facts that the defendant in Winter Storm was "clearly the originator", and in "Aqua Stoli" neither the court nor the parties addressed whether the funds that were actually attached had been sent to or from the defendant (461 F. Supp. 2d at 225), this Court concluded it would be "illogical" to construe the "to or from" statement to "broaden Winter Storm". 461 F. Supp. 2d at 225.

Sitting as an admiralty judge charged with deciding a case in the absence of a precedent or a statute, this Court then considered what the rule should be in the case of a "beneficiary-EFT". In deciding to draw on New York state law in an important area such as banking, this Court cited Second Circuit precedent in Reibor Int'l Ltd. v. Cargo Carriers (KACz-Co.) Ltd. 759 F. 2d 262 (2d Cir. 1985).

> a decision. . . contrary to the general rule of the state might have disruptive
> consequences for the state banking system." [*Det Bergenske Dampskibsselskab v.
> Sabre Shipping Corp.*, 341 F.2d 50, 52-53 (2d Cir. 1965)] (citation omitted).
> New York being the situs for multiple transactions in world commerce, the New
> York banking system is particularly vulnerable to such disruption. Often, when a

5

person in one foreign country makes a payment in U.S. dollars to someone in another foreign country, [**10)] the payment clears through New York. . . . It is only appropriate therefore that we look to the New York law of attachment for guidance.

Seamar, 461 F. Supp. 2d at 225.

The New York Uniform Commercial Code, §4-A-502, as explained in Comment 4, provides that "until the funds transfer is complete by acceptance by the beneficiary's bank of a payment order for the benefit of the beneficiary, the beneficiary [here, Jaldhi] has no property interest in the funds transfer which the beneficiary's creditor can reach." 461 F. Supp. 2d at 226. Adopting this rule as the rule to be applied to the case before him, your Honor vacated the attachment of a "beneficiary-EFT", *Id.*

Similarly, in the present case this Court should vacate the attachment of about $4.4 million because Jaldhi was the beneficiary of those EFTs at the time the funds were restrained in the hands of an intermediary bank.

## POINT NO. III

### JALDHI IS ENTITLED TO COUNTER-SECURITY

As discussed at Point I, supra, SCI has waived its defense of sovereign immunity as to Jaldhi's counterclaims which arose out of the "transaction or occurrence" that is the subject matter of SCI's claim. 28 U.S.C. §1607 (b). The Second Circuit has construed the transaction or occurrence standard liberally:

> In determining whether a claim arises out of the transaction. . . that is the subject matter of the opposing party's claim, this Circuit generally has taken a broad view, not requiring an absolute identity of factual backgrounds . . . but only a logical relationship between them. This approach looks to the logical relationship between the claim and the counterclaim, and attempts to determine whether the essential facts of the various claims are so logically connected that considerations of judicial economy and fairness dictate that all the issues be resolved in one lawsuit.

United States v. Aquavella, 615 F. 2d 12, 22 (2d Cir. 1980) (emphasis added).

6

In the present case, there is a clear "logical relationship" between SCI's claim for hire and Jaldhi's counterclaim for off-hire as one mirrors the other. Furthermore, Jaldhi's counterclaim for the shipper's lost profit claim has a close nexus to the Vessel's crane collapse and the consequent delays at the loading port which were most likely caused by the unseaworthiness of the Vessel which has been denied by SCI.

       1.    Jaldhi's Counterclaims Are Not Frivolous

SCI's argument saying Defendant's counterclaims are frivolous, lack merit and are premature amounts to nothing more than the Plaintiff's own view of things and the Plaintiff's own interpretation of its obligations under the contract. If that were to be the case, then the rules of evidence and notions of due process would be trampled underground by self-serving declarations from attorneys advocating their client's positions. To avoid such an absurd result, the Court should mind the wisdom of Judge Lynch who recently observed that "courts should be reluctant to prejudge the merits of claims based entirely on the pleadings and a sparse record consisting of a few documents, in advance of any discovery." Finecom Shipping Ltd. v. Multi Trade Enterprises AG, 2005 U.S. Dist. LEXIS 25671 (S.D.N.Y. 2005). This is particularly true where "the ultimate merits will be decided not by this Court," but by another foreign judicial body. *Id.* (Final decision in Finecom rested with foreign arbitration panel).

We respectfully submit that this Court should not pre-judge the dispute and it should especially not do so in reliance on the allegations made in SCI's Opposition Brief. These allegations are not evidence and sweeping general statements that the counterclaims are baseless. If that were the standard for considering the validity of claim, then the Court would be required to equally credit the Defendant's view of the material, express or implied terms of the agreement

and the claim of breach on the part of SCI which are set forth in Mr. Oza's declaration and exhibits.

In conclusion, the Plaintiff has not come even close to establishing that Jaldhi's counterclaims are frivolous so as to depart from the goal of placing the parties on equal footing.

    2.    Jaldhi's Counterclaims Are Not Premature

While it is true that some courts have disallowed a maritime attachment when the petitioner's only potential cause of action is in indemnity and the indemnitee has not yet been adjudged liable or paid out on the claimant's settlement, other courts have permitted the attachment in a pure indemnity claim. See, Navalmar (U.K.) Ltd. v. Welspun Gujarat Stahl Rohren, 485 F. Supp. 2d 399 (S.D.N.Y., 2007), where the court held that:

> Several district judges, using the label "unaccrued", "premature", or "unripe", have ruled that a claim for indemnity by the vessel owner, that is, one brought before the consignee's claim against the owner is judicially determined or otherwise resolved, may not be basis of a maritime attachment. Other judges have ruled to the contrary, that a claim for indemnity is a lawful admiralty claim, and one that qualifies under Admiralty Rule B as entitling the plaintiff to an arrest of ship or attachment or garnishment of money or property found in the district.

Id. at 404 (citation omitted). The Recent trend has been to allow the counter-claims even though the counter-claimant's liability has not been fixed. See In re Oil Spill by the Amoco Cadiz, 491 F. Supp. at 165:

> "this approach seems sound when (as here) the counterclaim is based on pre-action events and only the right to relief depends upon the outcome of the main action." 6C. Wright and A. Miller, Federal Practice and Procedure, § 1411 p. 57 (1971) (hereinafter, "Wright and Miller").

> Therefore, the court finds that the counter-claims state claims which may be asserted presently without waiting until after counterclaimant's liability is fixed.

In the present case, Jaldhi respectfully submits that this Court should permit Jaldhi's counter-claim for the shippers' loss of profit claim, even though Jaldhi's only potential cause of action is in indemnity and it has not yet been adjudged liable or paid out on the claim in

settlement. See Staronset Shipping Ltd. v. Northstar Navigation 659 F. Supp. 189, 191 (S.D.N.Y. 1987).

    3.    Authority Relied upon by SCI is Inapplicable

    The decisions relied upon by the SCI to support its argument that Jaldhi's counterclaims are frivolous and/or highly contingent is not relevant to the instant case. None of those cases present the fact situation present in the instant case in which at the very least SCI has conceded that Jaldhi is entitled to counter-security for the initial hire installment in the amount of $1,260,585.00 plus interest and costs during the period that the Vessel was off-hire while the crane was broken down. (Opp. Brief at 15).

    In Ythan Ltd v. Americas Bulk Transport Ltd., 336 F. Supp. 2d 305 (S.D.N.Y. 2004), the court denied defendant's claim for counter-security in the amount of $4.4 million on a cargo indemnity claim. However, in that case plaintiff had already posted security for claims directly by the cargo owners against it. Here SCI has not posted any security for the shipper's lost profit claim in the amount of $2 million. That claim has been asserted by the shippers against Jaldhi and for which Jaldhi seeks to hold SCI liable.

    In Trinidad Foundry and Fabricating Ltd. v. M/V KAS CAMILLA, 776 F. Supp. 1555 (S.D. Fla. 1991), the evidence showed that the defendant's authorized representative had confirmed that the repairs performed by the plaintiff to the vessel had been satisfactorily completed. The court held that "this fact alone indicates that Defendant's Counterclaims may be frivolous, and constitute sufficient cause shown to remove the presumption of counter-security dictated by Rule E(7)". Id. at 1558. No such facts are present in the instant case.

    In Expert Diesel v. Yacht FISHIN FOOL, 627 F. Supp. 432 (S.D. Fla. 1986), the court found that "plaintiff is basically a one man operation to -- a local and maritime diesel engine mechanic without dock facilities. Unable to exert a possessory lien, plaintiff must rely, as in this

case, on the enforcement of maritime liens through the Admiralty jurisdictions of the District

courts". Thus, the court held that compelling plaintiff to post a bond to secure defendant's

counterclaim would "unfairly and unreasonably" inhibits plaintiff's prosecution of its case. In

contrast, SCI is a profitable commercial venture of the Government of India and has an excellent

track record of earning profits. See, Exhibit 7 to *Wanchoo Aff.* Thus, unlike Expert Diesel,

requiring SCI to post counter-security will not impose any burden on the Plaintiff.

    SCI also cites to U.S. Maritime Services Inc. v. Trade Ventures Inc., 1998 U.S. Dist.

LEXIS 10608 (E.D. La. 1998), where the court found that "granting the requested counter-

security will create a tremendous burden on the plaintiff and serve little purpose other than to

halt the litigation. Further, the defendant's claim for the alleged lost charter is too speculative to

sustain an order for counter-security". *Id. at *6.* Again no such facts are present in the instant

case.

    Finally, North Offshore AS v. Rolv Berg Drive AS, 2007 U.S. Dist. LEXIS 87648

(S.D.N.Y. 2007) where the defendant failed to submit any evidence in support of its

counterclaim. On the other hand, the plaintiff submitted an affidavit of its managing director

which showed that it was not possible to extend defendant's charter party because the condition

precedent to that extension was not fulfilled. In the present case, Jaldhi's counterclaims are well

documented in Mr. Oza's Declaration and the accompanying exhibits none of which have been

contravened by the SCI. Accordingly, unlike North Offshore, Jaldhi's counterclaims are not

frivolous or so lacking in merit that this Court can only conclude that the counterclaim was

advanced solely to secure a negotiating advantage over SCI. See, Titan Navigation Inc. v.

Timsco Inc. 808 F. 2d 400, 404 (5th Cir. 1987).

4.     The Counterclaim Exception To Sovereign Immunity Permits Equivalent Security

Under 28 U.S.C. §1607(c) SCI shall not be immune with respect to Jaldhi's

counterclaims to the extent the counterclaims do not exceed the sum attached.

Although in Clipper Shipping Lines Ltd. v. Global Transporte Oceanico S.A., 2007 U.S.

Dist. LEXIS 18827, *4-5 (S.D.N.Y.2007) plaintiff did not raise the defense of sovereign

immunity, the court held that counter-security should be awarded in an amount equivalent to that

originally attached.  Moreover, any additional funds attached by the plaintiff would be matched

by an increase in the total counter-security attached. Id.  See, also Finecom Shipping Ltd. v.

Multi Trade Enterprises AG, 2005 U.S. Dist LEXIS 25761 (S.D.N.Y. 2005).  Including a

matching provision in the Court's order will avoid the necessity of potential repeated

applications for counter-security, if and when additional funds transfers are restrained.

## CONCLUSION

WHEREFORE, for all the foregoing reasons and the reasons discussed in Defendant's

Memorandum of Law, this Honorable Court should modify its Attachment Order so that it

applies to EFTs of which Jaldhi is the originator, and to vacate the attachment of about $4.4

million presently restrained because Jaldhi was the beneficiary of these funds and to order SCI to

post counter-security for the counterclaims asserted by Jaldhi.

Dated: New York, New York
       June 6, 2008

Respectfully submitted,

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Defendant
JALDHI OVERSEAS PTE. LTD.

By:   _Rahul Wanchoo_
      Rahul Wanchoo (RW-8725)

# APPENDIX A

**LAW OFFICES OF RAHUL WANCHOO**
Attorneys for Plaintiff
Empire State Building
350 Fifth Avenue, 59th Floor
New York, New York 10118
Phone:  (201) 882-0303
Fax:    (212) 618-0213
E-mail: rwanchoo@wanchoolaw.com


UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X

THE SHIPPING CORPORATION OF INDIA LTD.

                Plaintiff,

          - against -

JALDHI OVERSEAS PTE LTD.,

                Defendant.

-----------------------------------------------------------X

ECF CASE

08 Civ 4328 (JSR)


<u>**VERIFIED ANSWER AND COUNTERCLAIM**</u>

    Defendant, JALDHI OVERSEAS PTE LTD., by its attorneys, Law Offices of Rahul

Wanchoo, for its Verified Answer and Counterclaim, upon information and belief, alleges as

follows:

1.     Admits that this is a case of admiralty and maritime jurisdiction within the meaning of

Rule 9(h) of the Federal Rules of Civil Procedure, and within the admiralty and maritime

jurisdiction of the United States and this Honorable Court, admits that this case also falls under

the Court's admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333 but, except as so

specifically admitted, denies the remaining allegations in Paragraph 1 of the Amended Verified

Complaint.

2.      Admits that Plaintiff is the owner of the M/V RISHIKESH ("Vessel") but, except as so

expressly admitted, denies knowledge or information sufficient to form a belief as to the

remaining allegations contained in Paragraph 2 of the Amended Verified Complaint.

3.      Admits the allegations contained in Paragraph 3 of the Amended Verified Complaint.

4.      Admits the allegations contained in Paragraph 4 of the Amended Verified Complaint.

5.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 5 of the Amended Verified Complaint.

6.      Denies the allegations contained in Paragraph 6 of the Amended Verified Complaint.

7.      Admits the allegations contained in Paragraph 7 of the Amended Verified Complaint.

8.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 8 of the Amended Verified Complaint.

9.      Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 9 of the Amended Verified Complaint.

10.     Denies knowledge or information sufficient to form a belief as to the truth of the

allegations contained in Paragraph 10 of the Amended Verified Complaint.

11.     Admits that the Charter is subject to English law and London arbitration, but except as so

specifically admitted, denies the remaining allegations in Paragraph 11 of the Amended Verified

Complaint.

## ANSWERING COUNT I – Rule B Relief

12.     Defendant repeats and realleges its answers to each and every allegation contained in

Paragraphs 1 through 11 as if set out at length in this paragraph.

13.    Admits that Plaintiff has obtained a Process of Maritime Attachment and Garnishment

from this Court and has attached Defendant's electronic funds transfers passing through New

York banks but, except as so expressly admitted, denies knowledge or information sufficient to

form a belief as to the remaining allegations contained in Paragraph 13 of the Amended Verified

Complaint.

14.    Admits that Defendant does not have a presence within the Southern District of New

York, but except as so expressly admitted, denies knowledge or information sufficient to form a

belief as to this allegations contained in remaining Paragraph 14 of the Amended Verified

Complaint.

### FIRST DEFENCE

15.    The Court lacks jurisdiction over the person of Defendant.

### SECOND DEFENCE

16.    The Charter provides that all disputes are to be submitted to London arbitration with

English law to apply.

17.    Defendant expressly reserves the right to arbitrate the merits of the disputes with Plaintiff

in London Arbitration pursuant to English law and asserts its counterclaim solely to obtain

security for its damages.

### COUNTERCLAIM

18.    This counterclaim arises out of the same transactions or occurrences with respect to

which the action was originally filed and Defendant has given security to Plaintiff to respond to

Plaintiff's alleged damages.

19.    Plaintiff is a corporation or other business entity organized and existing under the laws of

a foreign country.

3

20.     Defendant is a corporation or other business entity organized and existing under the laws
of a foreign country.

21.     On or about March 12, 2008, Plaintiff and Defendant entered into a Charter for the
Vessel for the carriage of a cargo of bulk iron ore from India to China.

22.     The Charter provided that the Plaintiff was to deliver the Vessel "with hull, machinery
and equipment in a thoroughly efficient state.  Plaintiff delivered the Vessel to Defendant at
about 0130 hours GMT on March 29, 2008.

23.     Following delivery, the Vessel was berthed and loading commenced.  About six hours
into the loading operation, the Vessel's No.1 crane collapsed.  The crane collapse seriously
injured the crane driver who subsequently died.  Following the crane collapse, the Kolkatta Port
Trust suspended all loading operations until the entire Vessel's cranes were inspected and
Plaintiff had submitted certain documentation to the Port Trust.  As a result of the accident and
the suspension of the Vessel from Defendant's service, the Defendant placed the Vessel off hire.
Furthermore, given the fact that the crane collapse occurred only six hours after the Vessel was
delivered to the Defendant, no hire is due under the Charter to the Plaintiff till the Vessel is all
fast alongside at the same or similar berth from where she was removed from Defendant's
service. Nevertheless, Defendant has paid hire to the Plaintiff in the amount of $1,260,585.00,
which is hire for the first fifteen days plus the value of bunkers estimated to be consumed till
Singapore.

24.     Under clause 8 of the Charter Defendant was required to "load, stow, and trim, tally, lash,
secure and discharge the cargo at their expense".  The employment of stevedores and crane
operators was carried out for and on behalf of the Defendant.  Accordingly, Defendant is
potentially liable for any wrongful death claims which may be brought by the estate of the Indian

4

crane operator against the Defendant. Defendant claims $1,000,000.00 as counter-security from

Plaintiff for the wrongful death of the crane operator.

25.    Clause 4 of the subject Charter provides for hire to be payable at the rate of $80,000/day.

It is Defendant's case that Plaintiff is liable for breaches aforesaid by way of damages at large

for losses of the Defendant. Notwithstanding the fact that the Vessel is off hire and no hire is

payable by the Defendant from when the accident occurred till date, Plaintiff has attached

Defendant's funds as security for hire until 28th May 2008 in the total amount of $3,503,510.00.

Plaintiff is not entitled to hire for this period as the evidence clearly establishes that the Vessel

was unseaworthy and deficient with respect to its loading equipment resulting in the tragic and

unfortunate death of the crane operator. In the circumstances, Defendant claims counter-security

in the same amount for which Plaintiff has obtained security by way of attachment of

Defendant's funds in the amount of $3,503,510.00

27.    Defendant had employed the Vessel for the carriage of a cargo of about 50,000 metric

tons iron ore to China. The shippers of the cargo are Messrs. Rashmi Metaliks Ltd., Rashmi

Group, Kolkatta. The Charter provided for a laycan of 20th March/5th April 2008, which the

Vessel achieved. However, the failure of the Vessel to load the said cargo to date because of the

Plaintiff's breach has resulted in the shippers alleged losses of around $2 million which they say

are recoverable from the Defendant. In the event Defendant is held liable to the shippers for the

loss of profit claim, Defendant will claim indemnity from the Plaintiff for such losses which

resulted from Plaintiff's breach of the Charter. Accordingly, Defendant claims counter-security

for the shipper's loss of profit claim in the amount of $2,000,000.00.

28.    Defendant, by reason of the premises, has sustained damages, no part of which has been

paid, in the amount of $7,764,095.00.

5

29.    Interest, costs and attorneys' fees are regularly awarded to the prevailing party in

proceedings in London arbitration pursuant to English law.

30.    The total amount sought as counter-security through the assertion of this counterclaim is

calculated as follows:

(i)    Principal claim for wrongful death, charter hire and loss of profit in the amount of

$7,764,095.00

(ii)    Estimated interest on the hire and bunkers paid of $1,260,585.00 for three years at

the rate of 7% compounded 3-monthly in the amount of $291,749.00

(iii)    Estimated attorneys' fees and expenses in the amount of $450,000.00

(iv)    For a total counterclaim in the amount of $8,505,844.00

31.    On May 7, 2008, this Court issued an Ex Parte Order of Maritime Attachment.

32.    Thereafter, the Clerk of the Court issued Process of Maritime Attachment and Garnish of

any assets of Defendant in the hands of The Bank of New York, Bank of America, JP Morgan

Chase, ABN Amro Bank, American Express Bank, Barclay's Bank, BNP Paribas, Citibank,

Deutsche Bank and/or Deutsche Bank Trust Co. Americas, Dresdner Bank AG, HSBC Bank

USA, Wachovia Bank, N.A., New York, and UBS.

33.    The Process of Maritime Attachment and Garnishment was served upon the garnishee

banks and on or about May 14, 2008, assets of Defendant were garnished in the amount of

$4,816,218.00.

34.    Defendant lacks counter-security for its counterclaim.

35.    Defendant brings this counterclaim solely to obtain counter-security for its counterclaim.

36.    The charter party provides that any disputes between Plaintiff and Defendant are to be

submitted to London arbitration with English law to apply.

6

37.     Defendant expressly reserves the right to submit the merits of the disputes between

Plaintiff and Defendant to London Arbitration with English law to apply.

WHEREFORE, Defendant prays as follows:

1.      That the Court, in accordance with the provisions of Rule E(7) of the

Supplemental Rules for Certain Admiralty and Maritime Claims, direct Plaintiff to post a bond in

the usual form in the amount of $8,505,844.00 as security to respond in damages to the claim set

forth in the counterclaim;

2.      That the Court enter judgment against Plaintiff in the amount of any arbitral

award or judgment obtained by Defendant against Plaintiff, plus interest, costs and attorneys'

fees;

3.      That such judgment, to the extent possible, be satisfied by the security posted by

Plaintiff; and

4.      That the Court grant Defendant such other further and different relief as may be

just, proper and equitable in the premises.


Dated: New York, New York
       June 1, 2008


                              LAW OFFICES OF RAHUL WANCHOO
                              Attorneys for Defendant
                              JALDHI OVERSEAS PTE. LTD.


                         By:  _____
                              Rahul Wanchoo (RW-8725)


7

## VERIFICATION

Rahul Wanchoo, Esq., pursuant to the provisions of 28 U.S.C. § 1746, declares and states as follows:

1.     I am a principal of the firm, Law Offices of Rahul Wanchoo, attorneys for Defendant, and I make this Verification on behalf of Defendant.

2.     I have read the foregoing Verified Answer and Counterclaim and know the contents thereof, and the same are true to the best of my knowledge, information and belief.

3.     The sources of my information and the grounds for my belief are communications and documents received from the Defendant and London solicitors for Defendant and an examination of the papers relating to the matters in suit.

4.     The reason that this Verification is made by the undersigned, and not by Defendant, is that Defendant is a foreign corporation or other business entity, no officer or director of which is presently within this District.

Dated: New York, New York.
        June 1, 2008

I declare under penalty of perjury that the foregoing is true and correct.

_____
        Rahul Wanchoo

8